FILED

JUN 29 2009

Clerk, U.S. District and
Bankruptcy Courts

| | |
|---|---|
| KRISTOPHER BAUMANN,<br>Chairman of The Fraternal Order of Police,<br>Metropolitan Police Labor Committee | |
| 1524 Pennsylvania Avenue, S.E.<br>Washington, DC 20003, | UNITED STATES DISTRICT COURT<br><br>FOR THE DISTRICT OF COLUMBIA |
| Plaintiff, | |
| v. | Case No.: _____ |
| THE DISTRICT OF COLUMBIA, | |
| John Wilson Building<br>1350 Pennsylvania Avenue, N.W.<br>Washington, DC 20004, | Case: 1:09-cv-01189<br>Assigned To : Kollar-Kotelly, Colleen<br>Assign. Date : 6/29/2009<br>Description: TRO/PI |
| Serve:<br>Mayor Adrian M. Fenty<br>1350 Pennsylvania Avenue, N.W.<br>Washington, DC 20004, | |
| and | |
| Office of the Attorney General<br>for the District of Columbia<br>1350 Pennsylvania Avenue, N.W.,<br>Suite 409<br>Washington, DC 20004, | |
| CATHY L. LANIER,<br>Chief of Police for the Metropolitan<br>Police Department, | |
| 300 INDIANA AVENUE, N.W.<br>WASHINGTON, DC 20001, | |
| Defendants. | |

* * * * * * * * * * * * * *

## MOTION FOR TEMPORARY RESTRAINING
## ORDER AND PRELIMINARY INJUNCTIVE RELIEF

Plaintiff, Kristopher Baumann, by his attorneys, hereby submits this Motion for Temporary Restraining Order and Preliminary Injunctive Relief pursuant to Federal Rule of Civil

Procedure 65(a) and (b).  A Memorandum of Law in Support Thereof and a Proposed Order are served and filed herewith.

## REQUEST FOR HEARING

Plaintiff hereby requests an immediate, emergency hearing in this matter.

Respectfully submitted,

_/s/ Gregory T. Lawrence_
Gregory T. Lawrence (D.C. Bar No. 496843)
CONTI FENN & LAWRENCE LLC
36 South Charles Street, Suite 2501
Baltimore, Maryland  21201
(410) 837-6999
(410) 510-1647 (facsimile)

*Applications for Pro Hac Vice Being Submitted for*

Anthony M. Conti (D.C. Bar No. 479152)
Paul A. Fenn (D.C. Bar No. 494581)

Attorneys for Plaintiff

| | |
|---|---|
| KRISTOPHER BAUMANN,<br>Chairman of The Fraternal Order of Police,<br>Metropolitan Police Labor Committee | |
|     1524 Pennsylvania Avenue, S.E.<br>    Washington, DC 20003, | **UNITED STATES DISTRICT COURT**<br><br>**FOR THE DISTRICT OF COLUMBIA** |
|     Plaintiff, | |
| v. | Case No.: _____ |
| THE DISTRICT OF COLUMBIA, | |
|     John Wilson Building<br>    1350 Pennsylvania Avenue, N.W.<br>    Washington, DC 20004, | **FILED**<br>JUN 29 2009<br>Clerk, U.S. District and<br>Bankruptcy Courts |
|     Serve:<br>    Mayor Adrian M. Fenty<br>    1350 Pennsylvania Avenue, N.W.<br>    Washington, DC 20004, | |
|     and | 09 1189 |
|     Office of the Attorney General<br>    for the District of Columbia<br>    1350 Pennsylvania Avenue, N.W.,<br>    Suite 409<br>    Washington, DC 20004, | |
| CATHY L. LANIER,<br>Chief of Police for the Metropolitan<br>Police Department, | |
|     300 INDIANA AVENUE, N.W.<br>    WASHINGTON, DC 20001, | |
|     Defendants. | |

\* \* \* \* \* \* \* \* \* \* \* \* \* \*

**MEMORANDUM OF LAW IN SUPPORT**
**OF MOTION FOR TEMPORARY RESTRAINING**
**ORDER AND PRELIMINARY INJUNCTIVE RELIEF**

The plaintiff, Kristopher Baumann ("Chairman Baumann"), by his attorneys, submits this memorandum in support of his Motion for Temporary Restraining Order and Preliminary

Injunctive Relief against the defendants, The District of Columbia (the "District") and Chief Cathy Lanier ("Chief Lanier") of the Metropolitan Police Department ("MPD") (collectively, the "Defendants").

## I.
## INTRODUCTION

Pursuant to Article 9 of the Collective Bargaining Agreement between the parties ("CBA"), Chairman Baumann is assigned full-time to act as a union representative and has no regular tour of duty as an officer while acting in this capacity. Chairman Baumann is an advocate for approximately 3,600 police officers, detectives, and sergeants of the MPD, and he has challenged publicly and in the legal system numerous policies and practices of the MPD and its leadership. In response, the Defendants have initiated an illegal and improper investigation of Chairman Baumann concerning his protected union activities and free speech and association. Further, the Defendants have used MPD's governmental resources to "monitor" Chairman Baumann's union and free speech activities. Through the investigation and monitoring, the Defendants have threatened and attempted to intimidate Chairman Baumann. The Defendants' actions constitute clear violations of Chairman Baumann's First Amendment rights and the D.C. Whistleblower Protection Act, and thus warrant immediate injunctive relief from this Court. Unless and until a restraining order is entered prohibiting Defendants' improper conduct, Chairman Baumann and them union he represents will continue to suffer irreparable harm.

## II.
## FACTUAL BACKGROUND

On or about May 30, 2009, the MPD was involved in a pursuit of a suspect that had exchanged gunfire with MPD officers.[1] The suspect broke into a dwelling of bystanders. The

---

[1] This statement of the facts is substantially identical to the Verified Complaint, which Chairman Baumann affirms under oath. The Verified Complaint is incorporated herein by reference fully in support of this Motion.

2

MPD's emergency response team ("ERT") surrounded the dwelling. The bystanders escaped the dwelling, and the suspect barricaded himself inside. During the barricade, there were purportedly several unusual actions by MPD command officials that potentially created public safety issues and violated MPD Orders, including, but not limited to, an order for gas to be used against the suspect, an order "greenlighting" the use of deadly force against the suspect by a sniper, orders from officials or individuals outside of the approved chain of command, command officials standing directly in the line of the suspect's fire, and the use of recently reassigned hostage negotiators to resolve the incident.[2]

Shortly after the May 30 barricade, FOP Vice Chairman Wendell Cunningham contacted Chairman Baumann and informed him that several members had raised concerns about the safety issues and violations that he and others identified. Chairman Baumann ordered an investigation to be conducted by the FOP Safety Committee. The FOP Safety Committee is part of the Joint Safety Committee recognized under the Article 17 of the Collective Bargaining Agreement ("CBA") between the FOP and the District. *See* Exhibit 2. Vice Chairman Cunningham oversees all FOP committees on behalf of the Chairman.

The FOP Safety Committee is a permanent FOP committee that is responsible for conducting investigations, issuing reports, making findings, and making recommendations regarding safety issues. The FOP Safety Committee investigates safety incidents and problems ranging from police-involved shootings to MPD equipment and facility issues, such as mold in buildings. The FOP Safety Committee works in conjunction with the MPD as is part of the Joint Safety Committee. Members of the FOP Safety Committee and the Joint Safety Committee are police officers. The referral of a matter to the FOP and Joint Safety Committees is a "protected

---

[2] A barricade situation compels members of the MPD to call on the MPD ERT to take over the scene and engage in highly coordinated tactics. *See* Exhibit 1 (General Order 309.1).

3

disclosure" under the D.C. Whistleblower Protection Act, D.C. Code § 1-615.51, *et seq.* (the "Whistleblower Act").

After being ordered to refer the matter to the FOP Safety Committee, Vice Chairman Cunningham requested a taped copy of the radio communications that occurred during the barricade. This request was necessary in order to provide the FOP and Joint Safety Committees with taped copies of incidents for use in investigations.

In or about early June 2009, Chief Lanier ordered, by and through other MPD officials, Lieutenant Dean Welch ("Lieutenant Welch") to conduct an Internal Affairs investigation of Chairman Baumann relating to the protected disclosure (the "Protected Disclosure Investigation").

Prior to June 17, 2009, Lieutenant Welch had interviewed FOP members and union representatives as part of the Protected Disclosure Investigation, including Vice Chairman Cunningham. Vice Chairman Cunningham and others confirmed to Lieutenant Welch that the FOP Safety Committee was investigating the safety issues and violations related to the barricade. Moreover, the MPD knew that the FOP Safety Committee was investigating this matter because it had agreed to meet with this Committee. *See* Exhibit 3. As a result, at this time, and prior to June 17, 2009, the MPD was well aware of Chairman Baumann's protected disclosure and the potentially embarrassing issues and violations that would likely be confirmed by the FOP Safety Committee's investigation.

On or about June 17, 2009, Chairman Baumann was improperly ordered, via e-mail, to report to the District of Columbia Internal Affairs Division for an administrative interview (the "Interview"). *See* Exhibit 4. At the time the e-mail was received, Chairman Baumann was testifying as the sole witness on behalf of the FOP in an arbitration being conducted at the

4

MPD's headquarters. At the core of this arbitration was the FOP's assertion that "AHOD" (All Hands on Deck), Chief Lanier's public relations initiative and cornerstone of her tenure as Chief, is illegal and in violation of numerous collective bargaining provisions. The result of this arbitration may have potentially profound impacts upon AHOD, including, but not limited to, shutting down AHOD in its entirety and costing the MPD in excess of $1,000,000.00 in compensation owed to the entire police force.

Notwithstanding the MPD's clear knowledge of Chairman Baumann's whereabouts and purpose on June 17, 2009, and the fact that Chairman Baumann was testifying as the FOP's sole witness in the arbitration, Internal Affairs sent the e-mail referenced above. In addition to the shocking timing of this e-mail, which impacted, among other things, Chairman Baumann's ability to testify as a rebuttal witness at the AHOD arbitration, this request violated the express terms of the CBA. In particular, Article 9 of the CBA states unambiguously that reasonable inquiry can be made of FOP officials regarding FOP business only "by the Department's Labor Relations Representative." *See* Exhibit 2. The term "Labor Relations Representative" does not include Internal Affairs. The MPD and the FOP also have an established history on this issue, including a recent sequence of events where Chairman Baumann was called by Internal Affairs, Chairman Baumann objected to the request under Article 9 of the CBA, and Internal Affairs properly revoked its attempts to circumvent the CBA, allowing the MPD's Labor and Employee Relations Unit ("LERU") to then step in and submit written questions. *See* Exhibit 5.

Pursuant to the terms of the CBA, Chairman Baumann immediately contacted LERU. *See* Exhibit 6. Chairman Baumann was notified that LERU was checking on the matter. *Id.* Despite repeated emails, messages, and a personal visit by Chairman Baumann, no one from LERU responded to any of Chairman Baumann's requests for clarification on the matter.

On June 18, 2009, Chairman Baumann received additional e-mail and voicemail messages ordering him to report to Internal Affairs at 0800 hours on June 19, 2009. *See* Exhibit 7. On the evening of June 18, 2009, Chairman Baumann was scheduled to speak at a public meeting. Chairman Baumann often speaks at public meetings and to the media as part of his community outreach and other obligations as Chairman of the FOP. These meetings and media outlets are intended to be free arenas for the exchange of information and ideas pertaining generally to public policing issues. At this meeting, an on-duty, uniformed MPD Lieutenant in a marked patrol car was present. Chairman Baumann spoke with this Lieutenant, and the Lieutenant informed Chairman Baumann that he was ordered by his supervisor to attend the meeting to "monitor" what Chairman Baumann said at the meeting. Significantly, this "monitoring" was being performed while Chairman Baumann was a target of the illegal and improper Internal Affairs Protected Disclosure Investigation, and this monitoring was intended to "chill" Chairman Baumann's protected free speech and associations in his role as the FOP Chairman.

On the morning of June 19, 2009, there was a funeral being conducted in the District for the security guard, Stephen Johns, who had been killed at the Holocaust Museum. Chairman Baumann had been featured in the national media regarding the incident, and his absence at the funeral was conspicuous. As a result of Internal Affairs' last minute notice on Thursday evening, and as a result of the fact that the FOP's top three officials were required to be present at Internal Affairs for Chairman Baumann's interview, the FOP was unable to send a representative to the funeral.

On June 19, 2009, Chairman Baumann reported to Internal Affairs for an interview (the "Interview"). No prior notice or information regarding the scope or content of the underlying

investigation was provided to Chairman Baumann. Upon arrival, Lieutenant Welch refused to allow Vice Chairman Cunningham to represent Chairman Baumann as his designated FOP representative. When asked if that refusal was for cause, Lieutenant Welch stated, "yes," without any further explanation. When Chairman Baumann asked if he could be provided a copy of the refusal for cause in writing, Lieutenant Welch stated, "yes," and that he would even put it on the record. Lieutenant Welch, however, did not provide a written refusal for cause, and he did not put the refusal on the record at the Interview.

At the Interview, Chairman Baumann was interrogated by Lieutenant Welch. Lieutenant Welch informed Chairman Baumann during this interrogation that he was the "target" of the administrative investigation. Lieutenant Welch refused, however, to provide Chairman Baumann with the charge and violation despite Chairman Baumann's repeated requests for this information. Lieutenant Welch also refused to provide the identification of a General Order authorizing the Interview despite Chairman Baumann's request for this information. The only authority provided by Lieutenant Welch for the Interview was a paragraph from an attachment to a General Order. It is noteworthy that the actual General Order and the citation within the General Order to the alleged violation for which Chairman Baumann is being investigated has never been identified by the MPD or provided to Chairman Baumann, despite being directly and specifically requested.

During the Interview, Lieutenant Welch claimed he was unaware of Article 9 of the CBA and any past practices of the MPD or Internal Affairs regarding contacting or investigating the Chairman of FOP. During the Interview, Lieutenant Welch also informed Chairman Baumann that Chief Lanier was the Complainant in the matter. Lieutenant Welch was unable to provide any instance or occasion where Chairman Baumann was not acting in his capacity as Chairman

during any of the events that he discussed during his questioning of Chairman Baumann.

During the Interview, Lieutenant Welch questioned Chairman Baumann regarding the work of the FOP Safety Committee, Chairman Baumann's communications with Vice-Chairman Cunningham, the Protected Disclosure, and any contact with the press concerning the dwelling barricade and the taped correspondence of the MPD ERT. Chairman Baumann responded to these questions by asserting that he was, at all times, acting in his capacity as Chairman of the FOP, and thus the questioning was improper based upon every privilege available and because of the fact that the questions were illegal and improper questions about union and First Amendment activities posed under the threat of discipline.

## III.
### ANALYSIS

**A.     Applicable Legal Standard**

In considering a request for an injunction and a restraining order, the Court should consider whether the moving party demonstrates: (1) that there is a substantial likelihood he will prevail on the merits; (2) that he is in danger of suffering irreparable harm during the pendency of the action; (3) that more harm will result to him from the denial of the injunction than will result to the defendant from its grant; and, in appropriate cases, (4) that the public interest will not be disserved by the issuance of the requested order. *See, e.g., Wieck v. Sterenbuch*, 350 A.2d 384, 387 (D.C. 1976).

**B.** **The Factors Tilt Decisively in Favor of the Equitable Relief Requested by Chairman Baumann.**

    **1)** **Chairman Baumann Likely Will Prevail on the Merits.**

        **(a) Chairman Baumann's First Amendment Claim.**

The conduct of Defendants constitutes clear violations of Chairman Baumann's First Amendment rights of freedom of speech and freedom of association. Pursuant to Article 9 of the CBA, Chairman Baumann is assigned full time as Chairman of the FOP. Thus, Chairman Baumann, when acting as a union representative, has the full, unlimited protection of the First Amendment, just as any other private citizen. *See Nagle v. Village of Calumet Park*, 554 F.3d 1106, 1123 (7th Cir. 2009) (Williams, J.); *Fuerst v. Clarke*, 454 F.3d 770 (7th Cir. 2006) (Posner, J.); *Shirden v. Cordero*, 509 F. Supp.2d 461, 466-67 (D.N.J. 2007).[3]

Defendants' tactics are in retaliation for Chairman Baumann's protected First Amendment Activities and continue to violate Chairman Baumann's First Amendment rights. Defendants initiated the internal affairs investigation in retaliation for Chairman Baumann's protected disclosure ordering an investigation of the May 30 Barricade by the FOP Safety Committee, as well as his efforts challenging Chief Lanier's AHOD initiative. Both of these activities fall under his duties as Chairman of the FOP, and Chairman Baumann is afforded full protections under the First Amendment. In addition, Lieutenant Welch's continued direct

---

[3] These cases all held that the U.S. Supreme Court's holding in *Garcetti v. Ceballos*, 547 U.S. 410 (2006) is inapplicable to public employees who are acting in their capacity as union officials. In *Garcetti*, the Court held that a public employee's speech, when speaking in their capacity as a citizen, was protected under the First Amendment if that employee could satisfy the following four (4) elements: First, the government employee must be speaking as a citizen. Second, he must be speaking to a matter of public concern. Third, the employee's free speech interests outweigh the employer's interest in effective and efficient fulfillment of its responsibilities. Fourth, the employee must show that the speech played a substantial part in bringing about an adverse employment action. *See Garcetti*, 547 U.S. at 417-19. Even if this test is somehow applicable here, Chairman Baumann's speech concerning AHOD and the May 30 barricade would be protected speech, for both topics are areas of substantial public concern for which Defendants have inconsequential countervailing interests in preventing their disclosure considering, among other things, both are matters of public record.

communication with Chairman Baumann is in plain violation of Article 9 of the CBA, and the deployment of uniformed officers to "monitor" Chairman Baumann while making public appearances on behalf of the FOP, are both tactics intended to chill his First Amendment right to Freedom of Speech and Association. Accordingly, Chairman Baumann will likely prevail on the merits of his First Amendment claim.

### (b) Chairman Baumann's Whistleblower Act Claim

The Whistleblower Protection Act specifically prohibits the conduct complained of in the Verified Complaint. As described above, Chairman Baumann, as Chairman of the FOP, has been actively challenging Chief Lanier's AHOD initiative through arbitration and public criticism. In addition, Chairman Baumann has recently ordered an investigation as to the May 30 barricade. During arbitration proceedings that were intended to have a direct impact upon the resolution of FOP's AHOD challenge, Chairman Baumann received an email from Lieutenant Welch, ordering Chairman Baumann to report to Internal Affairs. Later, Chairman Baumann learned that he was the target of an Internal Affairs investigation that was ordered by Chief Lanier, the general order and specific charge of which remains undisclosed by both Chief Lanier and Lieutenant Welch.

Chief Lanier and Lieutenant Welch were both made aware of Chairman Baumann's protected disclosures ordering an investigation of the May 30 barricade almost immediately, yet did not decide to initiate the investigation of Chairman Baumann, or at the very least notify him of such investigation, for over two weeks, until Chairman Baumann was actively engaged in arbitration against Chief Lanier's AHOD initiative. The timing and lack of any articulately basis for this investigation demonstrates that Defendants initiated this investigation in bad faith and in direct retaliation for Chairman Baumann's protected disclosures. The clear motivation for

Defendants' conduct was and is to prevent Chairman Baumann from effectively fulfilling his role as FOP Chairman by initiating an improper and frivolous investigation in retaliation for Chairman Baumann's protected disclosures. Accordingly, Chairman Baumann will likely prevail on the merits of his Whistleblower Act claim.

    2)    **<u>Defendants' Actions Have Irreparably Harmed, and Will Continue to Irreparably Harm, Chairman Baumann Unless Enjoined.</u>**

An award of damages against Defendants in this case will not adequately remedy Chairman Baumann's injuries. For example, one of the undisputable facts in this case is that Defendants have subjected Chairman Baumann to an ongoing pattern of harassment to interfere with and punish him for his actions as a union official and not as a police officer, acts for which monetary relief will not adequately compensate him or the FOP and its members. Defendants' actions have already interfered with Chairman Baumann's ability to fulfill his duties as Chairman of the FOP, impacting his ability to provide rebuttal testimony at the June 17, 2009 arbitration, and forcing him to spend valuable time coordinating his own defense in the Internal Affairs matter, missing important public appearances as a union representative and being personally intimidated and curtailed in his speech during public speaking engagements. This type of damage does not, and never will, have an appropriate monetary amount to assign to the harm caused. Moreover, this is precisely the type of systemic and representational interference, as well as personal reputational harm that injunctive relief is best suited to remedy. Accordingly, the only viable and legitimate remedy under the circumstances is the entry of an Order immediately staying the Internal Affairs investigation, enjoining Defendants from sending uniformed officers to "monitor" Chairman Baumann's union activities, and issuing an Order that

all future communications from MPD officials to Chairman Baumann, or any other FOP representative, be conducted through LERU.

### 3) The Requested Injunctive Relief will not Injure Defendants in any Manner.

The relief Chairman Baumann seeks simply will result in staying an investigation and monitoring scheme that amounted to illegal conduct by Defendants, and causing Defendants to adhere to a specific protocol to which they are already bound. Indeed, this is exactly the type of situation temporary restraining orders are designed for—to maintain the *status quo* until a full and fair hearing can be held on the merits. Accordingly, this factor also supports the requested equitable relief.

### 4) The Public Interest Supports the Grant of Injunctive Relief.

Granting the injunctive relief requested would serve the public interest of preserving the sanctity and integrity of the First Amendment and the Whistleblower Act. More specifically, the requested relief would discourage the type of conduct similar to that of Defendants in this case. Further, the requested relief would preserve the rights of union officials protected by the First Amendment and employees protected by the Whistleblower Act who are the subject of illegitimate actions arising out of their union activities. Accordingly, this factor also supports the requested equitable relief.

C. **Chairman Baumann will Post an Appropriate Bond.**

In order to ensure that no undue hardship or injury inures to the Defendants, Chairman Baumann is willing to post a bond, pursuant to FED. R. CIV. P. 65(c) and Local Rule 65.1.1, in an amount to be determined by the Court. Chairman Baumann asserts, however, that no such bond is necessary in this case in light of the foregoing analysis, which demonstrates, among other

things, that the Defendants are not likely to incur any undue hardship or injury as a result of the issuance of the requested injunctive relief.

**D.     Copies Provided**

Copies of this memorandum, motion, proposed order, verified complaint, civil cover sheet, pro hac vice motions and all filings in this matter have been hand delivered on the date of this filing to the parties as identified in the caption in the verified complaint and have been sent via electronic mail to General Counsel's Office for the Metropolitan Police Department.

**E. Oral Hearing Requested**

The plaintiff requests an oral hearing on this motion for temporary restraining order.

### IV.
### CONCLUSION

For the reasons stated above, Chairman Baumann respectfully requests that this Court grant the requested injunctive relief set forth in the Verified Complaint filed in this action, enjoining the conduct of Defendants through a Temporary Restraining Order until a full hearing on the merits can be held.

_____
Gregory T. Lawrence (D.C. Bar No. 496843)
CONTI FENN & LAWRENCE LLC
36 South Charles Street, Suite 2501
Baltimore, Maryland 21201
(410) 837-6999
(410) 510-1647 (facsimile)

*Applications for Pro Hac Vice Being Submitted for*
Anthony M. Conti (D.C. Bar No. 479152)
Paul A. Fenn (D.C. Bar No. 494581)

Attorneys for Plaintiff

| | |
|---|---|
| KRISTOPHER BAUMANN, <br> Chairman of The Fraternal Order of Police, <br> Metropolitan Police Labor Committee <br><br> 1524 Pennsylvania Avenue, S.E. <br> Washington, DC 20003, <br><br> Plaintiff, <br><br> v. <br><br> THE DISTRICT OF COLUMBIA, <br><br> John Wilson Building <br> 1350 Pennsylvania Avenue, N.W. <br> Washington, DC 20004, <br><br> Serve: <br> Mayor Adrian M. Fenty <br> 1350 Pennsylvania Avenue, N.W. <br> Washington, DC 20004, <br><br> and <br><br> Office of the Attorney General <br> for the District of Columbia <br> 1350 Pennsylvania Avenue, N.W., <br> Suite 409 <br> Washington, DC 20004, <br><br> CATHY L. LANIER, <br> Chief of Police for the Metropolitan <br> Police Department, <br><br> 300 INDIANA AVENUE, N.W. <br> WASHINGTON, DC 20001, <br><br> Defendants. | **UNITED STATES DISTRICT COURT** <br><br> **FOR THE DISTRICT OF COLUMBIA** <br><br> Case No.: _____ |

\* \* \* \* \* \* \* \* \* \* \* \* \* \*

## CERTIFICATE OF COUNSEL

I certify that on this 29th day of June, 2009, in accordance with Local Rule 65.1(a), actual notice of the time of making the application for the Temporary Restraining Order and Preliminary Injunctive Relief, and copies of all pleadings and papers filed in the action to date or

to be presented to the Court at the hearing have been furnished to the adverse parties via hand-delivery. Moreover, copies of all pleadings and papers filed in the action to date or to be presented to the Court at the hearing have been furnished to MPD General Counsel Terrence Ryan, Esq. and MPD Assistant General Counsel Mark Viehmeyer, Esq. via electronic mail.

                Respectfully submitted,

_____
Gregory T. Lawrence (D.C. Bar No. 496843)
CONTI FENN & LAWRENCE LLC
36 South Charles Street, Suite 2501
Baltimore, Maryland 21201
(410) 837-6999
(410) 510-1647 (facsimile)

*Applications for Pro Hac Vice Being Submitted for*

Anthony M. Conti (D.C. Bar No. 479152)
Paul A. Fenn (D.C. Bar No. 494581)

Attorneys for Plaintiff