## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

KRISTOPHER BAUMANN, Chairman of
The Fraternal Order of Police, Metropolitan
Police Labor Committee,

     Plaintiff,

     v.

THE DISTRICT OF COLUMBIA, *et al.*,

     Defendants.

Civil Action No. 09-1189 (CKK)

## MEMORANDUM OPINION
(July 11, 2009)

Plaintiff Kristopher Baumann, the Chairman of the Fraternal Order of Police and an

Officer of the Metropolitan Police Department, brings this action against the District of

Columbia and Cathy L. Lanier, the Chief of the Metropolitan Police Department (collectively,

"Defendants"), alleging interference with Plaintiff's First Amendment rights and retaliation

based on his whistle-blowing activities.[1]  Currently pending before the Court is a Motion for a

Temporary Restraining Order and Preliminary Injunctive Relief filed by Plaintiff on June 29,

2009, which the parties fully briefed as of July 8, 2009.  After thoroughly reviewing the parties'

submissions, relevant case law and statutory authority, and the record of the case as a whole, the

Court shall DENY Plaintiff's [4] Motion for a Temporary Restraining Order and Preliminary

Injunctive Relief, for the reasons that follow.

---

[1] Plaintiff refers to himself as "Chairman Baumann" and Defendants refer to him as
"Officer Baumann."  Although both titles are accurate, rather than step into the middle of this
semantic minefield, the Court shall use the identifier "Plaintiff" throughout this Memorandum
Opinion.

# I. BACKGROUND

*A.     Factual Background*

Plaintiff is the Chairman of the District of Columbia Fraternal Order of Police ("FOP")

and an officer employed by the Metropolitan Police Department ("MPD").  Pursuant to Article 9

of the Collective Bargaining Agreement between the FOP and MPD (the "CBA"), Plaintiff is

assigned full-time to act as the primary union representative of the FOP.  *See* Pl.'s Mot., Ex. 2 at

6 (FY 2004-FY 2008 CBA).

This case has its origins in a "barricade" incident that occurred on May 30, 2009.  Such

incidents are subject to various written procedures issued by the MPD.  *See* Pl.'s Mot., Ex. 1 at 1

(11/7/86 Barricade/Hostage Situation Procedures).  Following this incident, the Vice-Chairman

of the FOP, Wendell Cunningham, contacted Plaintiff to report that several FOP members raised

concerns about the procedures that were used.  Compl. ¶ 8.  In response, Plaintiff ordered an

investigation of the incident by the FOP Safety Committee, an entity that is part of the Joint

Safety Committee recognized under Article 17 of the CBA.  *See* Pl.'s Mot., Ex. 2 at 18 (FY

2004-FY 2008 CBA).[2]

On June 5, 2009, Vice-Chairman Cunningham requested a taped copy of the radio

communications that occurred during the barricade incident.  *See* Defs.' Opp'n, Ex. A at 1

(6/5/09 Documentation Receipt).  In connection with this request, Vice-Chairman Cunningham

signed a form ensuring that the radio recordings would not be released to the public:

> It is understood, the following recordings are for internal investigation only, there
> are no public requests for any of these incidents and the recordings will not be

---

[2] Vice-Chairman Cunningham oversees the FOP Safety Committee on behalf of Plaintiff.
Compl. ¶ 8.

released to the public without prior, written approval from the Office of Unified
Communications.

Defs.' Opp'n, Ex. A at 1 (6/5/09 Documentation Receipt).

Within hours after the radio recordings were released to Vice-Chairman Cunningham,
Defendants state that "MPD received a telephone call from a reporter representing that he had
listened to the recording[s]."  Defs.' Opp'n at 2.  As a result, Chief Lanier ordered Lieutenant
Dean Welch to conduct an Internal Affairs investigation "to determine the circumstances under
which the recording[s] [were] released."  *Id.* at 2.  Although Plaintiff's Complaint alleges that the
investigation was launched to specifically investigate Plaintiff and his First Amendment-
protected activities, *see, e.g.*, Compl. ¶ 11, the record does not support that position.  In fact,
Plaintiff's own statements underscore that the investigation involves a broader inquiry into the
alleged unauthorized release of the radio recordings to the press as to which Plaintiff may or may
not have been involved in some as-yet undetermined capacity.  *See* Pl.'s Reply, Ex. 3 ¶ 15 (Affid.
of K. Baumann) ("Lieutenant Welch's questions pertained to whether I ordered the FOP Safety
Committee Investigation, whether I released an audio recording to the press, and my
communications with other FOP members").

On June 17, 2009, Lieutenant Welch emailed Plaintiff and requested that he provide a
convenient date and time to schedule an administrative interview in connection with the
investigation:

> Chairman/Officer Baumann, I need you to contact me in reference to scheduling
> an interview concerning an administrative investigation I am conducting.  Please
> provide me with a date and time at your earliest convenience that you can respond
> to [the Internal Affairs Division].  Thank you for your cooperation.

Pl.'s Mot., Ex. 4 (6/17/09 Email from D. Welch to K. Baumann).  Plaintiff received the email

while he was testifying as a witness on behalf of the FOP in an arbitration concerning an "All Hands On Deck" initiative ("AHOD"), an apparent hot-button issue between MPD and the FOP. Pl.'s Reply, Ex. 3 ¶ 3 (Affid. of K. Baumann).  Plaintiff alleges that the MPD knew that he was testifying at the arbitration at the time of the communication.  Compl. ¶ 14.  Plaintiff also argues that the communication violated Article 9 of the CBA because, according to Plaintiff, the FOP Chairman may only receive inquiries about his union activities from the MPD's Labor Relations Representative, and not Internal Affairs.  *See* Pl.'s Mot., Ex. 2 (FY2004 - FY 2008 CBA) ("[t]he Labor Committee Chairman shall respond to inquiries by the Department's Labor Relationship Representative regarding the type and number of representational activities engaged in for a particular period").  Although Plaintiff repeatedly contacted individuals within the MPD's Labor and Employee Relations Unit to discuss Lieutenant Welch's email, he did not receive timely responses.  *See* Pl.'s Reply, Ex. 3 ¶¶ 5-6, 8-9 (Affid. of K. Baumann).

On June 18, 2009, Plaintiff attended a meeting of the Ward 5 Republicans, where he was invited to speak about crime-related issues in the District of Columbia.  *Id.* ¶ 7.  Plaintiff does not dispute that this was a public meeting.  *See* Defs.' Opp'n at 3; Pl.'s Reply at 5.  In any event, at the meeting, Plaintiff claims (and Defendants do not dispute) that a uniformed Lieutenant of MPD was present, and that the Lieutenant told Plaintiff that he was on duty and had been ordered to "monitor" Plaintiff's remarks.  Compl. ¶ 7.

Finally, on June 19, 2009, Plaintiff reported to an Internal Affairs interview with Lieutenant Welch.  Plaintiff was ordered to sign two documents, one that confirmed Plaintiff would respond to questions truthfully, and the other requiring Plaintiff to keep the contents of the interview confidential.  *Id.* ¶ 13.  Although the record is not entirely clear, it appears that Plaintiff

4

refused to respond to some or all of Lieutenant Welch's questions on the grounds that they

improperly impinged on Plaintiff's union activities and Plaintiff's First Amendment rights.  *See*

Compl. ¶ 23 ("[Plaintiff] responded to these questions by asserting that he was, at all times,

acting in his capacity as Chairman of the FOP, and thus the question was improper").

       B.     *Procedural Background*

Plaintiff filed this lawsuit on June 29, 2009.  Plaintiff's two-count Complaint alleges that

Defendants violated the District of Columbia Whistleblower Act, D.C. Code § 1-615.51, *et seq.*,

by

> engag[ing] in prohibited personnel actions, including threatening discipline and
> initiating an unwarranted, illegal, and improper investigation and monitoring of
> [Plaintiff's] protected union activities and free speech and association.  Further,
> the Defendant threatened discipline if [Plaintiff] did not respond to questions by
> the MPD's Internal Affairs Division.

Compl. ¶ 26.  Plaintiff also alleges that Defendants violated his rights guaranteed by the First

Amendment of the United States Constitution because

> [i]n response to [Plaintiff's] union activities challenging the AHOD initiative, and
> other alleged actions that purportedly form the underlying bases for the interview
> conducted by Internal Affairs of [Plaintiff], the MPD has taken adverse action
> against him in the form of a calculated pattern of intimidation and harassment that
> is meant to make him feel as if his job as a police officer is in jeopardy based
> upon his union activities.

*Id.* ¶ 35.  Plaintiff seeks compensatory damages, emergency and permanent injunctive relief, and

an order compelling disciplinary action against officials found to have acted unlawfully.

In connection with the filing of his Complaint, Plaintiff also filed an Emergency Motion

for a Temporary Restraining Order and Preliminary Injunctive Relief (stating identical grounds

for relief) seeking (1) to enjoin the Internal Affairs investigation, and (2) to prohibit Defendants'

interference with Plaintiff's First Amendment rights by detailing officers at his public speaking engagements and threatening him with discipline for his protected free speech.  On June 30, 2009, the Court held a conference call with counsel for both parties on the record to discuss scheduling related to the Motion.  Defendants agreed not to call Plaintiff into an interview related to the Internal Affairs investigation or subject Plaintiff to any disciplinary action on any date prior to July 14, 2009.  *See* [3] Order at 1 (Jun. 30, 2009).  With that agreement in place, and pursuant to the schedule set by the Court, Defendants filed an Opposition to Plaintiff's Motion on July 2, 2009, and Plaintiff filed a Reply on July 6, 2009.

After reviewing the parties' submissions, on July 7, 2009, the Court issued an Order explaining that Plaintiff had raised a new argument in his Reply that Defendants' actions violated D.C. Code § 5-333.04 (relating to "investigations and inquiries involving First Amendment activities"), and that the statute had not previously been addressed in the parties' previous submissions.  Accordingly, the Court ordered Defendants to file a Sur-Reply addressing the applicability of that statute.  *See* Min. Order dated Jul. 7, 2009.  In compliance with this Order, Defendants filed a Sur-Reply on July 8, 2009, emphasizing that Plaintiff failed to include any claim in his Complaint based on a violation of that D.C. statute and arguing that it is otherwise immaterial.  Plaintiff's Motion is therefore fully briefed and ripe for decision.

## II. LEGAL STANDARD

The standard for obtaining injunctive relief through either a temporary restraining order or a preliminary injunction is well established.  A moving party must show:  (1) a substantial likelihood of success on the merits, (2) that it would suffer irreparable injury if the injunction were not granted, (3) that an injunction would not substantially injure other interested parties,

and (4) that the public interest would be furthered by the injunction.  *Chaplaincy of Full Gospel Churches v. England*, 454 F.3d 290, 297 (D.C. Cir. 2006); *Hall v. Daschle*, 599 F. Supp. 2d 1, 6 n.2 (D.D.C. 2009) ("[t]he same standard applies to both temporary restraining orders and to preliminary injunctions").  In applying this four-factored standard, district courts may employ a sliding scale as to which a particularly strong showing in one area can compensate for weakness in another.  *Id*.  (quoting *CityFed Fin. Corp. v. Office of Thrift Supervision*, 58 F.3d 738, 747 (D.C. Cir. 1995)).  Nevertheless, both the United States Supreme Court and the Court of Appeals for the D.C. Circuit have emphasized that a plaintiff must show at least *some* likelihood of irreparable harm in the absence of an injunction.  *See Winter v. Nat. Res. Def. Council, Inc.*, __ U.S. __ , 129 S. Ct. 365, 375 (2008) (holding that a plaintiff must "demonstrate that irreparable injury is *likely* in the absence of an injunction," and not a mere "possibility"); *CityFed*, 58 F.3d at 747 (holding that a plaintiff must demonstrate "'at least some injury' for a preliminary injunction to issue . . . [because] 'the basis of injunctive relief in federal courts has always been irreparable harm . . . .'" (quoting *Sampson v. Murray*, 415 U.S. 61, 88 (1974)).

## III.  DISCUSSION

As set forth above, Plaintiff argues that Defendants violated his rights under the First Amendment of the United States Constitution and the D.C. Whistleblower Protection Act by (1) launching the Internal Affairs Investigation and (2) by monitoring his speech at a Ward 5 Republicans meeting in retaliation for his "protected disclosures."  Although Plaintiff's Motion does not clearly identify his protected disclosures, Plaintiff's Reply identifies three:  (1) his referral of the barricade incident for investigation to the Safety Committee; (2) his complaints concerning the AHOD initiative and specifically Plaintiff's testimony at an AHOD arbitration;

and (3) his speech at the Ward 5 Republicans meeting.  *See* Pl.'s Reply at 4-5.  While the Court

would ordinarily analyze each of the four injunctive relief criteria in context of a plaintiff's

claims, in this case, Plaintiff's Motion hits an immediate roadblock warranting a different

approach.  Put simply, Plaintiff is unable to demonstrate any likelihood of irreparable harm

because his allegations of future harm are based on nothing more than speculation at this point

and on this record.

     With respect to the Internal Affairs investigation, Defendants emphasize that "MPD has

*not* determined how the [radio] recording was released, has *not* determined who released the

record[ing], has *not* found *anyone* culpable in the release and *has not* proposed discipline against

anyone, most notably [] the plaintiff."  Defs.' Sur-Reply at 2.  Nothing in the Court's review of

the record suggests otherwise.  Similarly, Plaintiff has not stated that he released the radio

recordings, nor does he state that he was otherwise involved with their release.  *See generally*,

Pl.'s Compl., Pl.'s Mot., Pl.'s Reply.  *See also* Defs.' Opp'n at 5 n.1 ("If it is Plaintiff's position

that the release of the radio run is a protected disclosure, it would be useful if [he would] simply

acknowledge that he released the radio tape to the press.  Then, if adverse action were to be taken

against him, there would be a clear issue before the Court.").  Given the foregoing, Plaintiff's

arguments in support of his Motion are entirely speculative, as demonstrated by the following

passage from Plaintiff's Reply:

> Even if it were true that Plaintiff or another union member had released the tape in
> question to the media . . . the alleged release would constitute protected First
> Amendment speech assuming that the tape was released as part of an effort to
> expose governmental wrongdoing on a matter of public safety.  Defendants'
> actions of monitoring Plaintiff's Ward 5 Republican meeting speech and ordering
> Plaintiff to Internal Affairs as the target of an investigation that could result in his
> discharge, would be an improper interference with this alleged speech . . . .

Pl.'s Reply at 6 (emphasis added).  As is manifest from the underlined text, Plaintiff does not

admit releasing the recordings to the news media and Defendants have not found that Plaintiff

engaged in any wrongdoing, leaving Plaintiff (and the Court) to guess as to what may or may not

occur in the future.

Plaintiff argues that he faces "the imminent and irreparable harm of termination from the

police force that *may* await Plaintiff *if* the Internal Affairs investigation is allowed to continue,

which in turn will result in Plaintiff's inability to continue serving as the Chairman of the FOP

. . . ."  Pl.'s Reply at 24 (emphasis added).  Plaintiff's argument assumes that the investigation, if

it continues, will (1) result in a finding that he engaged in wrongdoing and (2) that he will be

subject to disciplinary action that will prevent his continuing service as Chairman of the FOP.

The Court finds no basis in the record to make those assumptions, nor to reach any other

conclusions as to what "may" occur "if" the investigation continues.  This type of "feared" harm

that may "occur at some indefinite time" is an inappropriate basis for ordering injunctive relief.

*Wisconsin Gas Co. v. FERC*, 758 F.2d 669, 674 (D.C. Cir. 1985) (per curiam) (holding that

irreparable harm is shown only where a plaintiff's injury is "both certain and great" rather than

"theoretical") (internal citation omitted).  *See also Mills v. District of Columbia*, 584 F. Supp. 2d

47, 63 (D.D.C. 2008) ("plaintiff must demonstrate that the injury is of such 'imminence' that

there is a clear and present need for equitable relief to prevent irreparable harm . . . [and] [p]ast

constitutional violations, therefore, are not sufficient alone to satisfy the irreparable harm

requirement . . . ." (emphasis in original omitted).[3]

---

[3] To the extent Plaintiff is suggesting that he will suffer irreparable injury merely by
having to spend his time answering questions pursuant to the Internal Affairs investigation, this

Plaintiff's assertions of irreparable harm fare no better in the context of Defendants' "monitoring" of Plaintiff's speeches.  As an initial matter, while Plaintiff's Motion appears to suggest that Defendants have monitored multiple speeches by Plaintiff, *see, e.g.*, Pl.'s Mot. at 10 ("the deployment of uniformed officers to 'monitor' [Plaintiff] while making public appearances on behalf of the FOP . . . are intended to chill his First Amendment right to Freedom of Speech and Association"), he in fact identifies only one such instance where he was monitored (the Ward 5 Republicans meeting).  *Id.* at 6.  Plaintiff does not identify any planned speaking engagements in the future, and provides no basis for the Court to find that Defendants will monitor Plaintiff's unidentified future speeches.  *Cf. Caneisha Mills v. District of Columbia*, No. 08-7127, Slip Op. at 5 (D.C. Cir. Jul. 10, 2009) (finding that the record supported the plaintiff's likelihood of success on the merits and a finding of irreparable harm related to a D.C. police checkpoint program, and explaining that "MPD Police Chief Cathy Lanier stated that she would continue to utilize [the checkpoints] 'until a judge orders [her] to stop'").  In the absence of a showing related to future harm, injunctive relief is inappropriate.  *See Taylor*, 56 F.3d at 1508 ("[w]ithout adequate proof of a threatened injury, plaintiff lacks . . . an adequate basis in equity for an injunction").  Plaintiff's Reply underscores this point.  *See* Pl.'s Reply at 3 ("Plaintiff is not required at this stage to demonstrate harm already suffered.  The point of preliminary injunctive relief is to prevent future irreparable harm.").  Accordingly, the Court finds that Plaintiff has failed to establish any likelihood of irreparable harm in the absence of injunctive relief at this

---

type of harm cannot be considered irreparable.  *See Chaplaincy*, 454 F.3d at 298 (D.C. Cir. 2006) ("[t]he key word in this consideration is *irreparable*.  Mere injuries, however substantial, in terms of money, time and energy necessarily expended in the absence of a stay are not enough") (quoting *Wisc. Gas Co.*, 758 F.2d at 674) (emphasis in original).

point and on this record.

The undeveloped factual record also leads the Court to conclude that Plaintiff has not shown a substantial likelihood of prevailing on the merits of his claims. In particular, Plaintiff's two causes of action both require Plaintiff to make a factual showing with respect to the *reasons* for Defendants' alleged retaliation and Plaintiffs' alleged protected speech. *See Wilburn v. Robinson*, 480 F.3d 1140, 1149 (D.C. Cir. 2007) (holding in the context of a First Amendment violation that a "public employee must have spoken as a citizen on a matter of public concern [and] the court must consider whether the governmental interest in promoting the efficiency of the public services it performs through its employees . . . outweighs the employee's interest, as a citizen, in commenting upon matters of public concern") (internal citations and punctuation omitted); *Zirkle v. District of Columbia*, 830 A.2d 1250, 1258 (D.C. 2003) (holding in the context of a Whistleblower Protection Act claim that a plaintiff must show that he was subject to a "'prohibited personnel action' because . . . he has made a 'protected disclosure'") (quoting D.C. Code § 1-615.53).

On this record, Plaintiff cannot show that the Internal Affairs investigation was retaliation for his protected speech because (1) the information in the record at this time suggests that it was initiated as a broader inquiry into the alleged unauthorized release of radio recordings to the press (not Plaintiff's protected disclosures) and (2) a balancing of interests is impossible without knowing who released the recordings and for what reason. Plaintiff's arguments to the contrary are simply unavailing. For example, Plaintiff argues that he "was acting in his union capacity as Chairman of the FOP at all relevant times in this matter," and was therefore subject to the same First Amendment protections as private citizens. Pl.'s Reply at 9-12. For purposes of Plaintiff's

Motion, Defendants do not dispute the capacity in which Plaintiff acted, *see* Defs.' Opp'n at 4,

nor should they – the argument is entirely unhelpful to Plaintiff.  Even if he receives the same

First Amendment protections as a private citizen, those protections are not unlimited.  Rather,

Plaintiff's First Amendment protections–even relying on the cases proffered by Plaintiff–must be

balanced against whether his "free speech interfered with the efficient operation" of the MPD.

*See, e.g.*, *Fuerst v. Clarke*, 454 F.3d 770, 774 (7th Cir. 2006).[4]  In the absence of any facts in the

record identifying the precise First Amendment speech at issue, the reasons for that speech, and

the consequences that followed as a result, the Court has no basis to find that Plaintiff has a

substantial likelihood of success on the merits of his claims based on Defendants' Internal

Affairs investigation.[5]

      Similarly, that Defendants attended and "monitored" Plaintiff's June 18, 2009 Ward 5

Republicans speech does not lead the Court to find that Plaintiff is substantially likely to prevail

on the merits of his claims.  As an initial matter, Plaintiff's most compelling argument

concerning this conduct–that it violated D.C. Code § 5-333.04–is a claim that was not included

in Plaintiff's Complaint and is not presently before the Court.  *See* Pl.'s Reply at 8 (placing

almost singular reliance on this D.C. statute to argue that Defendant's "monitoring" violated his

rights); Def.'s Sur-Reply at 1-3 (emphasizing that this claim was not pled in Plaintiff's

---

[4] For present purposes, the Court need not decide the applicability of the analysis in *Fuerst v. Clarke* to the present set of facts.  The Court notes that Plaintiff does not cite case law from this district to support his analysis of *Fuerst*, and Defendants do not discuss its application at all.

[5] Plaintiff repeatedly states that he might be disciplined in connection with the Internal Affairs investigation.  The only discipline that is presently substantiated is that which may occur if Plaintiff does not answer the questions by the investigator truthfully (which is unrelated to any of Plaintiff's protected speech).

Complaint).   Additionally, Plaintiff fails to otherwise develop his "monitoring" argument in the

context of the claims he did include in his Complaint, making no effort to show, for example,

that an appearance at one public meeting constitutes actionable retaliation.  *Cf. Zelnik v. Fashion*

*Inst. of Tech.*, 464 F.3d 217, 227 (2d Cir. 2006) (explaining that actionable retaliation in the First

Amendment context "was that which 'well might have dissuaded a reasonable worker [from

asserting First Amendment-protected rights]'") (quoting *Burlington N. & Santa Fe Ry. Co. v.*

*White*, 548 U.S. 53, 68 (2006)).  To be clear, the Court is not holding that Defendants' conduct

cannot form the basis for a viable claim, particularly if Plaintiff amends his Complaint.  The

Court is holding, however, that it cannot find that Plaintiff is substantially likely to prevail on the

merits of the claims in his Complaint given the present state of the undeveloped record in this

case.[6]

Finally, the parties' briefing discussed only briefly the other two elements of injunctive

relief (the public interest and harm to Defendants), and an extended discussion by the Court of

these elements is unnecessary.  In the absence of irreparable harm, and without a finding that

Plaintiff is substantially likely to prevail on the merits of his claims based on the record before

the Court at this time, no balance of interests could warrant injunctive relief.  Nevertheless, the

---

[6] The Court discerns two other arguments raised by Plaintiff that deserve only brief
mention.  First, Plaintiff argues that Defendants violated Article 9 of the CBA because his
presence at the Internal Affairs interview was requested by Lieutenant Welch and not a labor
relations representative.  *See, e.g.*, Pl.'s Reply at 15-18.  While the Court notes that a violation of
this provision is not at all clear based on the language of Article 9, for present purposes, the
Court simply notes that Plaintiff does not explain how a violation of this provision would support
the two causes of action included in his Complaint.  Second, Plaintiff appears to argue that the
receipt of an email during his expected arbitration testimony could constitute actionable
retaliation.  *Id.* at 4.  There is simply no factual basis in this record beyond temporal proximity
and speculation for the Court to reach any conclusions about whether Defendants sent this email
in retaliation for Plaintiff's protected disclosures.

Court finds that the public interest is best served by allowing the MPD's Internal Affairs

investigation as to the alleged unauthorized release of the radio recordings to the news media to

be completed, rather than to speculate as to what may or may not occur between the parties.

Defendants have a similar and substantial interest in ensuring that its internal rules are followed.

Nothing argued by Plaintiff persuades the Court otherwise.

## IV.  CONCLUSION

For the reasons set forth above, the Court shall DENY Plaintiff's [4] Motion for a

Temporary Restraining Order and Preliminary Injunctive Relief.  An appropriate Order

accompanies this Memorandum Opinion.

Date: July 11, 2009


_____/s/_____
**COLLEEN KOLLAR-KOTELLY**
United States District Judge