# UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

KRISTOPHER BAUMANN, Chairman of
The Fraternal Order of Police, Metropolitan
Police Labor Committee,

      Plaintiff,

      v.

THE DISTRICT OF COLUMBIA, *et al.*,

      Defendants.

Civil Action No. 09-1189 (CKK)

## MEMORANDUM OPINION
(August 4, 2009)

Plaintiff Kristopher Baumann, the Chairman of the Fraternal Order of Police and an

Officer of the Metropolitan Police Department, brings this action against the District of

Columbia and Cathy L. Lanier, the Chief of the Metropolitan Police Department (collectively,

"Defendants"), alleging interference with Plaintiff's First Amendment rights, retaliation based on

his whistle-blowing activities, and violation of D.C. Code § 5-333.04 (relating to investigations

and inquiries involving First Amendment activities).  On July 11, 2009, the Court denied

Plaintiff's Motion for a Temporary Restraining Order and Preliminary Injunctive Relief, finding

that (1) Plaintiff had failed to demonstrate that he would suffer any irreparable harm absent

injunctive relief, and (2) the undeveloped factual record in this case prevented Plaintiff from

demonstrating a substantial likelihood of success on the merits of his claims.  *See* [13] Mem. Op.

at 7-14 (Jul. 11, 2009).

Currently pending before the Court is Plaintiff's [20] Second Motion for a Preliminary

Injunction, which Plaintiff has filed based on a few additional facts that have developed since the

Court issued its previous decision.  After thoroughly reviewing the parties' submissions, relevant

case law and statutory authority, and the entire record of the case as a whole, the Court concludes

that its initial findings remain unaffected by the few factual developments identified by Plaintiff.

Accordingly, the Court again finds (1) that Plaintiff has not shown that he would suffer any

irreparable harm absent injunctive relief, and (2) that the factual record remains undeveloped,

thereby preventing Plaintiff from demonstrating a substantial likelihood of success on the merits

of his claims.  The Court shall therefore DENY Plaintiff's [20] Second Motion for a Preliminary

Injunction, for the reasons that follow.

## I.  BACKGROUND

Plaintiff is the Chairman of the District of Columbia Fraternal Order of Police ("FOP")

and an officer employed by the Metropolitan Police Department ("MPD").[1]  Pursuant to Article 9

of the Collective Bargaining Agreement between the FOP and MPD (the "CBA"), Plaintiff is

assigned full-time to act as the primary union representative of the FOP.  *See* Pl.'s First Mot., Ex.

2 at 6 (FY 2004-FY 2008 CBA).

This case has its origins in a "barricade" incident that occurred on May 30, 2009.  Such

incidents are subject to various written procedures issued by the MPD.  *See* Pl.'s First Mot., Ex. 1

at 1 (11/7/86 Barricade/Hostage Situation Procedures).  Following this incident, the Vice-

Chairman of the FOP, Wendell Cunningham, contacted Plaintiff to report that several FOP

members raised concerns about the procedures that were used.  Am. Compl. ¶ 8.  In response,

Plaintiff ordered an investigation of the incident by the FOP Safety Committee, an entity that is

---

[1] To provide the necessary context for Plaintiff's Second Motion for a Preliminary Injunction, the Court shall repeat a substantial portion of the factual summary from its July 11, 2009 Memorandum Opinion.

part of the Joint Safety Committee recognized under Article 17 of the CBA.  *Id.*; Pl.'s First Mot.,

Ex. 2 at 18 (FY 2004-FY 2008 CBA).[2]

On June 5, 2009, Vice-Chairman Cunningham requested a taped copy of the radio

communications that occurred during the barricade incident.  *See* Defs.' First Opp'n, Ex. A at 1

(6/5/09 Documentation Receipt).  In connection with this request, Vice-Chairman Cunningham

signed a form ensuring that the radio recordings would not be released to the public:

> It is understood, the following recordings are for internal investigation only, there
> are no public requests for any of these incidents and the recordings will not be
> released to the public without prior, written approval from the Office of Unified
> Communications.

*Id.*  The form identified the "[r]equesting agency and [i]dentifier" as "MPD/ERT".[3]  *Id.*

Defendants assert that the radio recordings could only have been released to Vice-Chairman

Cunningham in his capacity as a police officer and not as a union member, *see* Defs.' Second

Opp'n at 8 ("neither a 'Mr.' Cunningham nor a 'Citizen' Baumann would have been authorized

to simply walk in and get radio run recordings from the Unified Communications Office"),

although neither party has identified any evidence in the record supporting or refuting this

assertion.

Within hours after the radio recordings were released to Vice-Chairman Cunningham,

Defendants state that "MPD received a telephone call from a reporter representing that he had

listened to the recording[s]."  Defs.' First Opp'n at 2.  As a result, Chief Lanier ordered

Lieutenant Dean Welch to conduct an Internal Affairs investigation "to determine the

---

[2] Vice-Chairman Cunningham oversees the FOP Safety Committee on behalf of Plaintiff.
Am. Compl. ¶ 8.

[3] "ERT" is the MPD's Emergency Response Team.

3

circumstances under which the recording[s] [were] released." *Id.*

On June 17, 2009, Lieutenant Welch emailed Plaintiff and requested that he provide a convenient date and time to schedule an administrative interview in connection with the investigation:

> Chairman/Officer Baumann, I need you to contact me in reference to scheduling an interview concerning an administrative investigation I am conducting. Please provide me with a date and time at your earliest convenience that you can respond to [the Internal Affairs Division]. Thank you for your cooperation.

Pl.'s First Mot., Ex. 4 (6/17/09 Email from D. Welch to K. Baumann). Plaintiff received the email while he was testifying as a witness on behalf of the FOP in an arbitration concerning an "All Hands On Deck" initiative ("AHOD"), an apparent hot-button issue between MPD and the FOP. Pl.'s First Reply, Ex. 3 ¶ 3 (Affid. of K. Baumann). Although Plaintiff repeatedly contacted individuals within the MPD's Labor and Employee Relations Unit to discuss Lieutenant Welch's email, he did not receive timely responses. *See* Pl.'s First Reply, Ex. 3 ¶¶ 5-6, 8-9 (Affid. of K. Baumann).

On June 18, 2009, Plaintiff attended a meeting of the Ward 5 Republicans, where he was invited to speak about crime-related issues in the District of Columbia. *Id.* ¶ 7. Plaintiff does not dispute that this was a public meeting. Am. Compl. ¶ 17. At the meeting, Plaintiff claims (and Defendants do not dispute) that a uniformed Lieutenant of MPD was present, and that the Lieutenant told Plaintiff that he was on duty and had been ordered to "monitor" Plaintiff's remarks. *Id.*

On June 19, 2009, Plaintiff reported to an Internal Affairs interview with Lieutenant Welch. *Id.* ¶ 19. Although the record remains somewhat unclear, it appears that Plaintiff refused

to respond to some or all of Lieutenant Welch's questions on the grounds that they improperly

impinged on Plaintiff's union activities and Plaintiff's First Amendment rights. *Id.* ¶ 23

("[Plaintiff] responded to these questions by asserting that he was, at all times, acting in his

capacity as Chairman of the FOP, and thus the questioning was improper").

Plaintiff filed his First Motion for a Temporary Restraining Order and Preliminary

Injunctive Relief on June 29, 2009, seeking to enjoin Defendants' Internal Affairs investigation

and Defendants' "monitoring" of his speeches. The Court denied the Motion on July 11, 2009,

finding that "Plaintiff [was] unable to demonstrate any likelihood of irreparable harm because his

allegations of future harm [were] based on nothing more than speculation at this point and on this

record." Mem. Op. at 8 (Jul. 11, 2008). The Court also found that "[t]he undeveloped factual

record" prevented Plaintiff from "show[ing] a substantial likelihood of prevailing on the merits

of his claims." *Id.* at 11.

Plaintiff filed his Second Motion for a Preliminary Injunction on July 24, 2009, along

with an Amended Complaint that describes two new factual developments. First, Plaintiff

alleges that Defendants "stripped [him] of his police powers" on July 13, 2009, forcing him to

surrender his gun and badge "purportedly due to the fact that he missed a training session for

calendar year 2008." Am. Compl. ¶ 27. Plaintiff does not allege that Defendants wrongly

accused him of missing this training session, nor does he allege that the order to surrender his

gun and badge violated an MPD policy. Plaintiff also fails to provide any additional information

concerning whether he subsequently attended the training session and/or whether his police

powers were thereafter restored.

Second, Defendants proceeded to interview Plaintiff in connection with the Internal

Affairs investigation on July 14, 2009. *Id.* ¶ 28. Lieutenant Welch advised Plaintiff that he was under investigation for violating General Order 204.1, Part 6, Section A, Number 1, which relates to the release of information to the news media. *Id.* ¶ 29. Plaintiff was advised that "his employment may be terminated (1) as a result of the investigation, and (2) if he refused to answer the investigator's questions." *Id.* ¶ 30. During this interview, Plaintiff "stated that he had provided two news reporters with information regarding the May 30 barricade, including a 14-minute portion of an audiotape of the scene." *Id.*

Defendants filed an Opposition to Plaintiff's Second Motion for a Preliminary Injunction on July 29, 2009, arguing that "there are no materially changed circumstances here that would warrant the entry of preliminary injunctive relief any more than existed when [P]laintiff made his first motion which this Court denied." Defs.' Second Opp'n at 1. Plaintiff filed a Reply on July 31, 2009. Plaintiff's Second Motion for a Preliminary Injunction is therefore fully briefed and ripe for decision.[4]

## II. LEGAL STANDARD

The standard for obtaining injunctive relief through either a temporary restraining order or a preliminary injunction is well established. A moving party must show: (1) a substantial likelihood of success on the merits, (2) that it would suffer irreparable injury if the injunction were not granted, (3) that an injunction would not substantially injure other interested parties, and (4) that the public interest would be furthered by the injunction. *Chaplaincy of Full Gospel*

---

[4] Defendants also filed a Motion to Strike the second exhibit attached to Plaintiff's Reply. Because the Court finds that the exhibit is irrelevant to the issues currently before the Court, and because this Memorandum Opinion does not rely on any aspect of the exhibit or the parties' arguments related to the exhibit, the Court shall GRANT Defendants' [24] Motion to Strike.

*Churches v. England*, 454 F.3d 290, 297 (D.C. Cir. 2006); *Hall v. Daschle*, 599 F. Supp. 2d 1, 6

n.2 (D.D.C. 2009) ("[t]he same standard applies to both temporary restraining orders and to

preliminary injunctions").  In applying this four-factored standard, district courts may employ a

sliding scale as to which a particularly strong showing in one area can compensate for weakness

in another.  *Id.* (quoting *CityFed Fin. Corp. v. Office of Thrift Supervision*, 58 F.3d 738, 747

(D.C. Cir. 1995)).  Nevertheless, both the United States Supreme Court and the Court of Appeals

for the D.C. Circuit have emphasized that a plaintiff must show at least *some* likelihood of

irreparable harm in the absence of an injunction.  *See Winter v. Nat. Res. Def. Council, Inc.*, __

U.S. __ , 129 S. Ct. 365, 375 (2008) (holding that a plaintiff must "demonstrate that irreparable

injury is *likely* in the absence of an injunction," and not a mere "possibility"); *CityFed*, 58 F.3d at

747 (holding that a plaintiff must demonstrate "'at least some injury' for a preliminary injunction

to issue . . . [because] 'the basis of injunctive relief in federal courts has always been irreparable

harm . . . .'" (quoting *Sampson v. Murray*, 415 U.S. 61, 88 (1974)).

### III.  DISCUSSION

Plaintiff's First Motion for a Temporary Restraining Order and Preliminary Injunctive

Relief sought to enjoin Defendants' Internal Affairs investigation and the "monitoring" of

Plaintiff's speeches.  The Second Motion for a Preliminary Injunction focuses exclusively on the

investigation.  Plaintiff argues that "[i]t can no longer be said that the threat of Plaintiff losing his

job in retaliation for protected speech is speculative; therefore, Plaintiff seeks this Court's

intervention before he is unlawfully terminated from his employment."  Pl.'s Second Mot. at 3.

The Court disagrees with Plaintiff.

As an initial matter, the parties continue to dispute the nature of the Internal Affairs

investigation.  Plaintiff argues that the investigation is focused on his disclosure of the radio recordings to the media, which he undertook in his capacity as Chairman of the FOP and not as a police officer.  According to Plaintiff, "the MPD has plainly stated that it is Plaintiff's protected speech – his release of information and an audiotape segment to the media – that has placed him in jeopardy of termination of employment or other discipline."  Pl.'s Second Mot. at 11.

Defendants dispute this characterization.  While conceding that Plaintiff's various criticisms to the press concerning the barricade incident constitute "protected speech," Defendants emphasize that they "are not investigating the conversations [P]laintiff had with the press or statements he made to the public."  Defs.' Second Opp'n at 10.  Rather, Defendants explain that Vice-Chairman Cunningham requested the radio recording in his capacity as a police officer.  *See* Defs.' First Opp'n, Ex. A at 1 (6/5/09 Documentation Receipt) (identifying the "[r]equesting agency and [i]dentifier" as "MPD/ERT"); Defs.' Second Opp'n at 8 ("neither a 'Mr.' Cunningham nor a 'Citizen' Baumann would have been authorized to simply walk in and get radio run recordings from the Unified Communications Office").  In their view, the investigation will determine whether Vice-Chairman Cunningham and/or Plaintiff were acting in official police capacities when one or both obtained and/or released the recordings.  *See* Defs.' Second Opp'n at 8 ("the prohibition on further dissemination would not have applied to [P]laintiff, so long as he was receiving the recording as a police officer," and questioning whether Plaintiff received the recordings in his capacity as a police officer but released them in his capacity as a union official).  Thus, Defendants characterize the investigation as limited to "the circumstances under which the recording [that] Officer Cunningham obtained, upon condition [that] it not be further disseminated without written authorization, was improperly

8

released." *Id.* at 3.

The parties' disagreement as to how best to characterize the investigation reflects the larger issue that the investigation has not been completed, and therefore no findings or recommendations have been made relating to Plaintiff or anyone else.  The Court previously described this factual uncertainty in its July 11, 2008 decision:

> Plaintiff's argument assumes that the investigation, if it continues, will (1) result in a finding that he engaged in wrongdoing and (2) that he will be subject to disciplinary action that will prevent his continuing service as Chairman of the FOP.  The Court finds no basis in the record to make those assumptions, nor to reach any other conclusions as to what 'may' occur 'if' the investigation continues.

Mem. Op. at 9 (Jul. 11, 2009).  Defendants correctly emphasize how little has changed, noting that "[t]he investigation on this matter is *still* not complete.  *No* finding of misconduct on the part of [P]laintiff has been made.  *No* discipline has been proposed as to [P]laintiff . . . ."  Defs.' Second Opp'n at 5.  At bottom, "no adverse action has been taken, or even proposed against [Plaintiff]."  *Id.* at 6.

Beyond the speculative proposition that Plaintiff will be terminated as a result of the investigation, Defendants have submitted uncontroverted evidence that there are multiple types of discipline that could be imposed based on the investigation, and that Plaintiff would have an opportunity to pursue several layers of due process prior to imposition of any disciplinary action. *See* Defs.' Second Opp'n, Ex. 1 ¶ 4-15 (7/29/09 Decl. of M. Anzallo).  Significantly, this evidence establishes that Plaintiff's termination is far from certain and, even if termination were recommended as a form of discipline, Plaintiff would have weeks (if not months) to seek the Court's intervention (assuming there were an appropriate legal basis for such action).  While

Plaintiff emphasizes that he was told "that his employment *may* be terminated [] as a result of the investigation," Pl.'s Second Mot. at 2 (emphasis added), Defendants appear to have advised him of the potential consequences resulting from the investigation, but plainly did not advise him that he *was* going to be terminated.

      For these reasons, Plaintiff misses the mark with his blithe assertions that "the threat of Plaintiff losing his job" is no longer "speculative," Pl.'s Mot. at 3, and "[t]here is nothing more to investigate about how the [radio recording] was released."  Pl.'s Reply at 3.  Defendants have issued no findings pursuant to the investigation and have made no recommendation as to any discipline to be imposed on Plaintiff or anyone else.  The Court shall not fill in these blanks with Plaintiff's speculation.  As previously explained, injunctive relief is unwarranted where irreparable harm is only a mere possibility.  *See Wisconsin Gas Co. v. FERC*, 758 F.2d 669, 674 (D.C. Cir. 1985) (per curiam) (holding that irreparable harm is shown only where a plaintiff's injury is "both certain and great" rather than "theoretical") (internal citation omitted); *Taylor v. Resolution Trust Corp.*, 56 F.3d a1497, 1508 (D.C. Cir. 1995) ("[w]ithout adequate proof of a threatened injury, plaintiff lacks . . . an adequate basis in equity for an injunction").  *Cf. Mills v. District of Columbia*, 2009 U.S. App. LEXIS 15324 at *7 (D.C. Cir. Jul. 10, 2009) (finding that the record supported the plaintiff's likelihood of success on the merits and a finding of irreparable harm related to a D.C. police checkpoint program, and explaining that "MPD Police Chief Cathy Lanier stated that she would continue to utilize [the checkpoints] 'until a judge orders [her] to stop'").  The Court therefore continues to find that Plaintiff has failed to establish any likelihood of irreparable harm in the absence of injunctive relief at this point and on this record.

10

The Court, once again, also finds that the undeveloped record prevents Plaintiff from

establishing a likelihood of success on the merits of his claims.  For example, the scope of First

Amendment protection afforded to Plaintiff's speech depends on "whether [he speaks] as a

citizen on a matter of public concern."  *Garcetti v. Ceballos*, 547 U.S. 410, 419 (2006).  Here,

Defendants assert that one purpose of the investigation is to determine in what capacity Plaintiff

received and then disclosed the radio recordings to the press.  *See* Defs.' Second Reply at 9 ("The

investigation . . . is intended to determine how the radio recording, requested officially by the

ERT and collected by Officer Cunningham clearly in his capacity as a member of the ERT, was

released to the public.  Once the facts are known, the MPD will determine whether, in its view[,]

official action is warranted").[5]  Only after the investigation is complete will it be known whether

Plaintiff is facing discipline for speaking on a matter of public concern as a citizen and not as a

police officer.[6]

The Court also cannot find, on this record, that Plaintiff is likely to prevail on the merits

of his whistleblowing claim for two reasons.  First, the Internal Affairs investigation does not

---

[5] Plaintiff separately raises a "compelled disclosure claim" on the basis that he "was compelled to disclose information regarding his actions as Chairman of the union."  Pl.'s Second Mot. at 12.  Because Plaintiff makes no showing that he will be compelled to disclose future information concerning his FOP activities, his compelled disclosure claim provides no basis to award injunctive relief (which requires the threat of future harm, not harm that has already occurred).  In any event, because the investigation has not yet resulted in any findings, including those associated with the capacity in which Plaintiff acted when receiving and then disclosed the radio recordings, the Court finds that this allegation does not provide a basis for injunctive relief.

[6] None of the cases cited by Plaintiff suggest a different result.  *See, e.g.*, *FOP v. Rubin*, 26 F. Supp. 2d 133 (D.D.C. 1998) (holding, under pre-*Garcetti* precedents, that the defendants failed to show that the release of a videotape had a "necessary impact on the actual operation of the government," where there was no dispute that the officers were acting as citizens when they spoke on a matter of public concern).

appear to involve a protected disclosure because the Whistleblower Protection Act protects statements made to a supervisor or a public body, not the press. D.C. Code § 1-615.52(6), (7). Plaintiff concedes as much. *See* Pl.'s Reply at 8 ("Plaintiff's whistleblower claim is not defined by the focus of Defendant's Internal Affairs investigation. Rather, Plaintiff asserts that the Internal Affairs investigation *is* retaliation for Plaintiff's [protected disclosures]") (emphasis in original). Second, with respect to Plaintiff's "other" protected disclosures, the Court has already explained that Plaintiff must show that he is subject to retaliation "because of" his protected speech. *See* Mem. Op. at 11 (Jul. 11, 2009); D.C. Code § 1-615.53 (prohibiting retaliation "because of the employee's protected disclosure"). Plaintiff cannot demonstrate this factual nexus on the present record. *See* Mem. Op. at 11-12 (Jul. 11, 2009).

With respect to Plaintiff's remaining claim brought under D.C. Code § 5-333.042 (policy on investigations and inquiries involving First Amendment activities), the Court cannot find that Plaintiff is likely to prevail on this claim because it appears that no private right of action exists under the statute. Defendants argue that this statute "was designed to set standards for the MPD, not to create a new private cause of action," Defs.' Second Opp'n at 7, and Plaintiff does not argue otherwise – suggesting only that it would be a matter of first impression. *See* Pl.'s Second Reply at 10. Even if Plaintiff were correct in this regard, both parties should have provided a far more in depth briefing than what is presented to the Court, as their filings have eschewed legal analysis or citations to any legal authority. Notwithstanding this lack of briefing, it appears based on the Court's analysis that implying a cause of action in this statute is inappropriate because it sets standards of conduct but provides no indication that a private right of action was intended. *See Coates v. Elzie*, 768 A.2d 997, 1001 (D.C. 2001) (describing the legal analysis "relevant to

12

the question of whether a state law creates an implied cause of action"). Finally, the Court also finds that the undeveloped factual record prevents Plaintiff from demonstrating that Defendants are investigating First Amendment activities as opposed to a violation of an internal MPD regulation by Plaintiff or any other individual.

Based on the foregoing, the Court again finds that Plaintiff has not established a substantial likelihood of success on the merits at this point and on this record. Because the Court also finds that Plaintiff has not demonstrated that he will suffer irreparable harm absent injunctive relief, no balance of interests could warrant injunctive relief under these circumstances.[7] Accordingly, the Court shall deny Plaintiff's Second Motion for a Preliminary Injunction.

Two issues remain. First, Plaintiff includes a three-sentence argument on page 10 of his Second Motion for a Preliminary Injunction seeking to have the Court declare the MPD's General Order 204.01 (relating to its media policy) unconstitutional on its face. *See* Pl.'s Second Mot. at 10. Plaintiff's Amended Complaint did *not* plead this as a claim, alluding to it only in one sentence in paragraph 44 of the Amended Complaint, and failing to request any declaratory or other relief associated with this supposed "claim." The Court declines to rule on the constitutionality of an MDP policy based on such cursory briefing in the context of a Second

---

[7] Plaintiff asserts that he has been deprived of First Amendment freedoms, Pl.'s Second Mot. at 16, and that various harms will befall him or others in the absence of injunctive relief, *id.* at 17. These arguments do not weigh in favor of injunctive relief because they rely on the same speculation that has led the Court to conclude that injunctive relief is unwarranted. The Court previously found, and continues to find, that "the public interest is best served by allowing the MPD's Internal Affairs investigation as to the alleged unauthorized release of the radio recordings to the news media to be completed . . . [and that] Defendants have a similar and substantial interest in ensuring that its internal rules are followed." Mem. Op. at 14 (Jul. 11, 2009).

Motion for a Preliminary Injunction.  If Plaintiff wants to seriously pursue such a claim, he must include the claim in his Complaint (presumably in the context of declaratory relief), and provide more fulsome briefing in an appropriate context.[8]

Second, the Court notes the parties' increasingly hostile tone toward each other reflected in their filings.  Defendants correctly emphasize that Plaintiff should have consulted with them prior to filing his Second Motion for a Preliminary Injunction, *see* Local Civil Rule 7(m) (requiring consultation prior to the filing of any non-dispositive motion), particularly where, as here, a motion seeking emergency relief was filed late on a Friday during the summer month of July.  Even if the Local Civil Rules did not require such consultation, professional courtesy would suggest that notice should have been provided to Defendants.  The Court advises counsel for both parties that, going forward, they are expected to demonstrate civility toward each other and fully comply with the Local Civil Rules at all times.  The Court shall consider sanctions if counsel are unable or unwilling to meet these basic standards.

## IV.  CONCLUSION

For the reasons set forth above, the Court shall DENY Plaintiff's [20] Second Motion for a Preliminary Injunction.  An appropriate Order accompanies this Memorandum Opinion.

Date: August 4, 2009

_____/s/_____

**COLLEEN KOLLAR-KOTELLY**
United States District Judge

---

[8] A constitutional challenge is also premature at this stage of the litigation because the Internal Affairs investigation has not found Plaintiff culpable for violating this or any other MPD policy.  The Court shall not simply assume that Defendants will subject Plaintiff to discipline under this provision in order to rush headlong into the issue of the policy's constitutionality.