**UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA**

KRISTOPHER BAUMANN, Chairman of
The Fraternal Order of Police, Metropolitan
Police Labor Committee,

        Plaintiff,

    v.

DISTRICT OF COLUMBIA, *et al.*,

        Defendants.

Civil Action No. 09-1189 (CKK)

**MEMORANDUM OPINION**
(September 30, 2010)

Plaintiff Kristopher Baumann ("Plaintiff" or "Baumann"), Chairman of the District of

Columbia Fraternal Order of Police ("FOP") and an Officer of the Metropolitan Police

Department ("MPD"), brings this action against the District of Columbia and Cathy L. Lanier,

Chief of MPD (collectively, "Defendants"), alleging that Defendants retaliated against him for

engaging in protected activity in violation of his rights under the First Amendment, the District

of Columbia Whistleblower Protection Act, D.C. Code §§ 1-615.51 *et seq.* ("DCWPA"), and the

District of Columbia Police Investigations Concerning First Amendment Activites Act of 2004,

D.C. Code §§ 5-333.01 to 5-333.13.  Currently pending before the Court is Defendants' [36]

Motion for Judgment on the Pleadings, which Baumann opposes.  For the reasons explained

below, the Court shall deny Defendants' motion for judgment on the pleadings with respect to

Baumann's First Amendment and DCWPA claims and grant the motion with respect to

Baumann's claim for damages and certain other relief under the Police Investigations Concerning

First Amendment Activities Act.

## I. BACKGROUND

*A.      Factual Background*

Baumann is the Chairman of the District of Columbia Fraternal Order of Police ("FOP")
and an officer employed by MPD.   Pursuant to Article 9 of the Collective Bargaining Agreement
between the FOP and MPD (the "CBA"), Plaintiff is assigned full-time to act as the primary
union representative of the FOP.   *See* Verified First Am. Compl. ("Am. Compl.") ¶ 6.

This case has its origins in a "barricade" incident that occurred on or about May 30, 2009.
Am. Compl. ¶ 7; Answer ¶ 7.  The MPD was in pursuit of a suspect that had exchanged gunfire
with MPD officers when the suspect barricaded himself inside a building.  Am. Compl. ¶ 7;
Answer ¶ 7.  According to Baumann, MPD command officials took several unusual actions that
potentially created public safety issues and violated MPD orders, including allowing teargas to be
used against the suspect and authorizing the use of deadly force by a sniper.  Am. Compl. ¶ 7.
Baumann was not involved in the incident, but he was later contacted by FOP Vice-Chairman
Wendell Cunningham, who informed Baumann that several FOP members had raised concerns
about the incident.  Am. Compl. ¶ 8.  Baumann then directed Cunningham to conduct an
investigation through the FOP Safety Committee.  *Id*.  Cunningham requested a taped copy of the
radio communications that occurred during the barricade for the FOP Safety Committee to use in
their investigation.  *Id.* ¶ 10.  Baumann later admitted that he had provided a portion of the
recorded communications to reporters from the *Washington Post* and the *Washington Examiner*.
*Id.* ¶ 32.  In early June 2009, Chief Lanier ordered Lieutenant Dean Welch, among others, to
conduct an Internal Affairs investigation into the unauthorized release of confidential MPD radio

transmission recordings.  *Id.* ¶ 11; Answer ¶ 11.

Baumann contends that as part of this investigation, Lt. Welch interviewed FOP members and union representatives, including Vice-Chairman Cunningham, and asked about the FOP Safety Committee's investigation into the barricade incident.  *Id.* ¶ 12.  On or about June 17, 2009, Baumann received an email ordering him to report to the Internal Affairs Division for an interview.  Am. Compl. ¶ 13; Answer ¶ 13.  Baumann claims that this request violated the terms of the parties' CBA because Article 9 of the CBA states that reasonable inquiry regarding FOP business may be made only by the Department's Labor Relations Representative, which does not include Internal Affairs.  *Id.* at ¶ 14.  Baumann notified the MPD's Labor and Employee Relations Unit of the issue, but he never received clarification on the matter.  *Id.* ¶ 15.  On June 18, 2009, Baumann received additional email and voicemail messages ordering him to report to Internal Affairs at 8:00 a.m. on June 19 for an interview.  *Id.* ¶ 16.  At around the same time that Internal Affairs sought to interview him, Baumann was participating as a witness on behalf of FOP in an arbitration concerning whether Chief Lanier's "All Hands on Deck" program was illegal and in violation of collective bargaining provisions.  *Id.* ¶ 13; Answer ¶ 13.

On June 18, 2009, Baumann attended the District of Columbia's Ward 5 Republicans meeting, where he was scheduled to speak.  Am. Compl. ¶¶ 17, 41; Answer ¶ 17.  A uniformed, on-duty MPD officer in a marked patrol car was also present at that meeting.  Am. Compl. ¶ 17; Answer ¶ 17.  Baumann spoke to this officer before the meeting, and the officer told him that he was ordered by his supervisor to attend the meeting to "monitor" what Baumann said there.  Am. Compl. ¶ 17.

On June 19, 2009, Baumann reported to Internal Affairs for the interview.  Am. Compl.

¶ 19; Answer ¶ 19.  Lt. Welch refused to allow Vice-Chairman Cunningham to be present at the interview and represent Baumann as his FOP representative.  Am. Compl. ¶ 19; Answer ¶ 19. Baumann claims that Lt. Welch told him that he was the target of an administrative investigation into alleged violations of General Order 120.1, an order regarding discipline of police officers. Am. Compl. ¶ 20.  Baumann claims that Lt. Welch could not answer Baumann's questions about what he was alleged to have done wrong or what he was charged with violating but that Lt. Welch told him that he might be discharged.  *Id.*  During the interview, Lt. Welch told Baumann that he was not aware of Article 9 of the CBA.  *Id.* ¶ 21; Answer ¶ 21.  He also informed Baumann that Chief Lanier was the Complainant in the investigation.  Am. Compl. ¶ 22; Answer ¶ 22.  Lt. Welch questioned Baumann about the unauthorized release of the confidential recording, Am. Compl. ¶ 23; Answer ¶ 23, but Baumann refused to answer and claimed that the questions were improper since he had been acting as FOP Chairman during the events discussed, Am. Compl. ¶¶ 22, 23.

On June 29, 2009, Baumann filed this action along with a [4] Motion for Preliminary Injunction and Motion for Temporary Restraining Order, which the Court denied on July 11, 2009.  On July 13, 2009, Defendants relieved Baumann of his police powers, forcing him to surrender his badge and his gun.  *Id.* ¶ 27; Answer ¶ 27.  Defendants claim that Baumann was relieved of duty because he failed to comply with training requirements and that his police powers were reinstated after he completed the mandatory training.  Answer ¶ 27.  On July 14, 2009, Baumann was ordered to report to Internal Affairs to continue his interview with Welch. Am. Compl. ¶ 28; Answer ¶ 28.  Baumann claims that during this interview, he was informed that he was under investigation for violating General Order 204.1, an order regarding release of

information to the news media.  Am. Compl. ¶ 29.  Baumann was told that he might be terminated as a result of the investigation and was also informed that his failure to answer the investigator's questions may also be grounds for termination.  *Id.* ¶ 30; Answer ¶ 30.  Under these circumstances, Baumann felt compelled to admit that he had provided two news reporters with information regarding the May 30 barricade situation, including a 14-minute portion of an audiotape of the scene.  Am. Compl. ¶ 30; Answer ¶ 30.  Baumann also informed Welch that he had ordered the FOP Safety Committee to investigate the barricade incident.  Am. Compl. ¶ 32.

B.      *Procedural Background*

Baumann filed his initial Complaint on June 29, 2009, alleging that Defendants violated the DCWPA and the First Amendment by investigating him and monitoring his actions in retaliation for his criticism of MPD.  Baumann also filed an Emergency Motion for a Temporary Restraining Order and Preliminary Injunctive Relief on June 29, 2009, which the Court denied on July 11, 2009, finding that (1) Baumann had failed to demonstrate that he would suffer any irreparable harm absent injunctive relief, and (2) the undeveloped factual record in this case prevented Baumann from demonstrating a substantial likelihood of success on the merits of his claims.  *See* [13] Mem. Op. at 7-14 (Jul. 11, 2009).  On July 24, 2009, Baumann filed [20] a second Motion for Preliminary Injunction and [21] a Verified First Amended Complaint ("Amended Complaint"), based on the development of additional facts after the Court issued its July 11, 2009 decision.  The Amended Complaint alleges that Defendants violated the DCWPA (Count I), the First Amendment (Count II), and the Police Investigations Concerning First Amendment Activities Act of 2004 (Count III).  However, on August 3, 2009, the Court once again denied the motion because Baumann (1) had not established a substantial likelihood of

5

success on the merits, and (2) had not demonstrated that he would suffer irreparable harm absent

injunctive relief.  On August 26, 2009, Defendants filed their [30] Answer to the Amended

Complaint.

## II.  LEGAL STANDARD

Pursuant to Federal Rule of Civil Procedure 12(c), "[a]fter the pleadings are closed—but

early enough not to delay trial—a party may move for judgment on the pleadings."  Fed. R. Civ.

P. 12(c).  The appropriate standard for reviewing a motion for judgment on the pleadings is

"virtually identical" to that applied to a motion to dismiss under Rule 12(b)(6).  *See Haynesworth*

*v. Miller*, 820 F.2d 1245, 1254 (D.C. Cir. 1987), *abrogated on other grounds by Hartman v.*

*Moore*, 547 U.S. 250 (2006); *Jung v. Ass'n of Am. Med. Colleges*, 339 F. Supp. 2d 26, 36

(D.D.C. 2004) ("[T]he standard of review for motions for judgment on the pleadings under Rule

12(c) of the Federal Rules of Civil Procedure is essentially the same as that for motions to

dismiss under Rule 12(b)(6).").  Because a Rule 12(c) motion "would summarily extinguish

litigation at the threshold and foreclose the opportunity for discovery and factual presentation,"

the Court must treat Defendants' motion "with the greatest of care" and deny it "if there are

allegations in the complaint which, if proved, would provide a basis for recovery."

*Haynesworth*, 820 F.2d at 1254.

The Federal Rules of Civil Procedure require that a complaint contain "'a short and plain

statement of the claim showing that the pleader is entitled to relief,' in order to 'give the

defendant fair notice of what the . . . claim is and the grounds upon which it rests.'"  *Bell Atl.*

*Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (quoting *Conley v. Gibson*, 355 U.S. 41, 47 (1957));

*accord Erickson v. Pardus*, 551 U.S. 89, 93 (2007) (per curiam).  Although "detailed factual

allegations" are not necessary to withstand a motion to dismiss, to provide the "grounds" of

"entitle[ment] to relief," a plaintiff must furnish "more than labels and conclusions" or "a

formulaic recitation of the elements of a cause of action." *Twombly*, 550 U.S. at 555; *see also*

*Papasan v. Allain*, 478 U.S. 265, 286 (1986).  Instead, a complaint must contain sufficient factual

matter, accepted as true, to "state a claim to relief that is plausible on its face." *Twombly*, 550

U.S. at 570.  "A claim has facial plausibility when the plaintiff pleads factual content that allows

the court to draw the reasonable inference that the defendant is liable for the misconduct

alleged." *Ashcroft v. Iqbal*, __ U.S. __, 129 S. Ct. 1937, 1949 (2009) (citing *Twombly*, 550 U.S.

at 556).

        In evaluating either a Rule 12(c) motion for judgment on the pleadings or a Rule 12(b)(6)

motion to dismiss for failure to state a claim, the court must construe the complaint in a light

most favorable to the plaintiff and must accept as true all reasonable factual inferences drawn

from well-pleaded factual allegations.  *In re United Mine Workers of Am. Employee Benefit*

*Plans Litig.*, 854 F. Supp. 914, 915 (D.D.C. 1994); *see also Schuler v. United States*, 617 F.2d

605, 608 (D.C. Cir. 1979) ("The complaint must be 'liberally construed in favor of the plaintiff,'

who must be granted the benefit of all inferences that can be derived from the facts alleged.").

However, as the Supreme Court recently made clear, a plaintiff must provide more than just "a

sheer possibility that a defendant has acted unlawfully." *Iqbal*, 129 S. Ct. at 1950.  Where the

well-pleaded facts set forth in the complaint do not permit a court, drawing on its judicial

experience and common sense, to infer more than the "mere possibility of misconduct," the

complaint has not shown that the pleader is entitled to relief. *Id.* at 1950.  Moreover, the court is

not bound to accept the legal conclusions of the non-moving party. *See Taylor v. FDIC*, 132

F.3d 753, 762 (D.C. Cir. 1997).  If, on a motion for judgment outside the pleadings, "matters

outside the pleadings are presented to and not excluded by the court, the motion must be treated

as one for summary judgment under Rule 56."  Fed. R. Civ. P. 12(d).  The court is limited to

considering facts alleged in the complaint, any documents attached to or incorporated in the

complaint, matters of which the court may take judicial notice, and matters of public record.  *See*

*EEOC. v. St. Francis Xavier Parochial Sch.*, 117 F.3d 621, 624 (D.C. Cir.1997); *Marshall*

*County Health Care Auth. v. Shalala*, 988 F.2d 1221, 1226 n. 6 (D.C. Cir.1993).

### III.  DISCUSSION

Defendants have moved for summary judgment on each of Baumann's three claims for

relief.  The Court shall address each claim in turn.

*A.    Baumann's First Amendment Claim*

In Count II of his Amended Complaint, Baumann asserts a claim under 42 U.S.C. § 1983

for retaliation in violation of his First Amendment right to free speech.  A public employee

seeking to make out a claim of First Amendment retaliation must meet a four-factor test: (1) the

public employee must have spoken as a citizen on a matter of public concern; (2) the employee's

interest in speaking on matters of public concern must outweigh the government's interest in

promoting the efficiency of public services; (3) the employee must show that his speech was a

substantial or motivating factor in prompting the retaliatory act; and (4) the employee must refute

the government's showing, if made, that it would have reached the same decision in the absence

of the protected speech.  *Wilburn v. Robinson*, 480 F.3d 1140, 1149 (D.C. Cir. 2007); *Tao v.*

*Freeh*, 27 F.3d 635, 638-39 (D.C. Cir. 1994).  Here, Baumann alleges that he engaged in

protected speech when he (1) requested that the FOP Safety Committee investigate the barricade

incident, (2) testified regarding the "All Hands on Deck" initiative, (3) spoke at the Ward 5 Republicans meeting, and (4) gave statements to the press regarding the safety violations at the barricade scene.  Baumann contends that Defendants retaliated against him by initiating an improper investigation, sending a police officer to monitor his speech, and threatening him with discipline.

In their motion for summary judgment, Defendants do not address the four-factor test noted above but argue that MPD's investigation into the release of the radio recordings and its alleged monitoring of Baumann's speech at the Ward 5 Republicans meeting do not constitute actionable retaliation under the First Amendment.  To the extent Defendants are arguing that these actions have not harmed Baumann, their arguments miss the mark.  Baumann has alleged that Defendants initiated their investigation and detailed a uniformed officer to monitor his speech as retaliation for his criticism of MPD.  The First Amendment broadly prohibits the government from treating public employees adversely in retaliation for their exercise of free speech.  *See Tao v. Freeh*, 27 F.3d 635, 639 (D.C. Cir. 1994) ("The First Amendment protects government employees from 'even an act of retaliation as trivial as failing to hold a birthday party for a public employee . . . when intended to punish her exercising her free speech rights." (quoting *Rutan v. Republican Party of Illinois*, 497 U.S. 62, 76 n.8 (1990))).  Courts have generally recognized that there may be actionable harm where a government official takes actions that "would chill or silence a person of ordinary firmness from future First Amendment activities."  *Crawford-El v. Britton*, 93 F.3d 813, 826 (D.C. Cir. 1996) (en banc), *vacated on other grounds*, 523 U.S. 574 (1998); *see also Thaddeus-X v. Blatter*, 175 F.3d 378, 397 (6th Cir. 1999) ("We agree with the reasoning in [*Crawford-El*] and conclude that it is the appropriate

9

standard by which to determine what type of action is sufficiently adverse to be cognizable in a retaliation claim under § 1983."). Here, Baumann has alleged that Defendants improperly subjected him to questioning outside proper channels and sent a uniformed police officer to monitor his speech to the Ward 5 Republicans. Defendants argue that having a police officer attend a meeting where Baumann was speaking could not possibly amount to a constitutional violation because the officer has a right to listen to what Baumann has to say. However, Baumann alleges that the officer explicitly told him that he was ordered by his supervisor to attend the meeting for the purpose of "monitoring" Baumann. *See* Am. Compl. ¶ 17. Under these circumstances as alleged in the Amended Complaint, a jury could reasonably conclude that Defendants' actions would chill a person of ordinary firmness in Baumann's position from continuing to criticize MPD.

Defendants also argue that MPD's investigation cannot constitute unlawful retaliation because MPD has a legitimate interest in investigating the disclosure of sensitive information. Defendants rely principally on *Babb v. Chertoff*, Civil Action No. 05-1088, 2006 WL 1371679 (D.D.C. May 16, 2006), a case involving an investigation conducted by the Department of Homeland Security into possible disclosures of confidential information by its employees. *Id.* at *4. In *Babb*, Judge Royce C. Lamberth held that the investigators did not violate the freedom of association rights of the members of the Federal Air Marshals Association by asking questions about the organization's officers, organizational structure, and public statements. *Id.* The basis for Judge Lamberth's holding was that such questions did not implicate any right of association. Baumann, however, clearly has a right to engage in speech critical of MPD, and it is that right that would be chilled by being forced to answer questions as part of an investigation motivated

10

by retaliation.  Defendants disavow any retaliatory motive for the investigation, but that is a

factual question that Baumann will have the burden of proving at trial.  Baumann has satisfied

his burden of pleading with respect to this issue.  Defendants rely on documents outside the

pleadings to establish that Baumann has admitted that he disclosed the radio recording without

prior written authorization in violation of MPD policy, *see* Defs.' Mem. at 5-6, but such evidence

must be reserved for a motion for summary judgment.[1]  Moreover, Defendants take an overly

narrow view of Baumann's protected speech in this case.  If Baumann's claim were based solely

on his disclosure of the radio recordings, the Court would agree that the government's interest in

investigating the disclosure of sensitive communications would likely outweigh Baumann's

interest in disclosing them.  But Baumann's claim encompasses other protected speech, including

his testimony during the arbitration hearing about the "All Hands on Deck" initiative.

Defendants do appear to claim that Baumann's speech is unprotected because it was made

in his official capacity as a police officer rather than his personal capacity as a citizen.  *See*

*Garcetti v. Ceballos*, 547 U.S. 410, 421 (2006) ("[W]hen public employees make statements

pursuant to their official duties, the employees are not speaking as citizens for First Amendment

purposes, and the Constitution does not insulate their communications from employer

discipline.").  However, Baumann has alleged that all of his statements were made in his capacity

as Chairman of the FOP.  *See* Am. Compl. ¶ 40.  Courts have recognized that when a public

employee is acting in his capacity as a union leader, his speech is protected by the First

Amendment.  *See, e.g.*, *Fuerst v. Clarke*, 454 F.3d 770, 774 (7th Cir. 2006) ("Because Fuerst's

---

[1] The Court declines to convert Defendants' motion to one for summary judgment
pursuant to Rule 12(d).

comments that precipitated the adverse action taken against him were made in his capacity as a union representative, rather than in the course of his employment as a deputy sheriff . . .[,] the Supreme Court's recent decision in *Garcetti v. Ceballos* is inapposite." (internal citation omitted)); *see also Dist. Council 20 v. District of Columbia*, 150 F. Supp. 2d 136, 143 (D.D.C. 2001) ("[S]peech in the context of union activity will seldom be personal; most often it will be political speech." (quoting *Boddie v. City of Columbus*, 989 F.2d 745, 750 (5th Cir. 1993))).  At this stage of the litigation, the Court finds that Baumann was speaking as a citizen on matters of public concern.[2]

Defendants have not argued that Baumann's speech adversely affected MPD's operations, and therefore there is no basis, at this stage of the litigation, to conclude that MPD's interest in efficient operations outweighs Baumann's interest in speaking on matters of public concern.[3] Baumann's Amended Complaint alleges facts sufficient to establish that Defendants' adverse actions are retaliatory.  Accordingly, the Court shall deny Defendants' motion for judgment on the pleadings with respect to Baumann's First Amendment retaliation claim.

B.    *Baumann's Whistleblower Protection Act Claim*

In Count I of his Amended Complaint, Baumann asserts a violation of the D.C. Whistleblower Protection Act, D.C. Code §§ 1-615.51 *et seq.*  The DCWPA makes it unlawful

---

[2] Defendants do not argue that Baumann's speech—which concerned the safety of police officers and procedures for protecting the public—was not on a matter of public concern.

[3] To the extent that Defendants argue that their legitimate interest in conducting an investigation into unauthorized disclosures should outweigh Baumann's First Amendment rights, their argument ignores factual allegations in the Amended Complaint suggesting that even if the investigation was legitimate, the manner in which the investigation was conducted was retaliatory.

for a supervisor to take, or threaten to take, "a prohibited personnel action or otherwise retaliate

against an employee because of the employee's protected disclosure."  D.C. Code § 1-615.53

(2001).  The statute defines a "protected disclosure" as:

> any disclosure of information, not specifically prohibited by statute, by an employee
> to a supervisor or a public body that the employee reasonably believes evidences:
>
> (A) Gross mismanagement;
>
> (B) Gross misuse or waste of public resources or funds;
>
> (C) Abuse of authority in connection with the administration of a public program or
> the execution of a public contract;
>
> (D) A violation of a federal, state, or local law, rule, or regulation, or of a term of a
> contract between the District government and a District government contractor which
> is not of a merely technical or minimal nature; or
>
> (E) A substantial and specific danger to the public health and safety.

D.C. Code § 1-615.52(a)(6).  A "public body" includes "any . . . District of Columbia . . . police

or peace officer."  *Id.* § 1-615.52(a)(7)(D).  Baumann alleges that he made numerous disclosures

to public bodies for which Defendants retaliated against him.  *See* Am. Compl. ¶ 35.

Defendants argue that Baumann's DCWPA claim must fail because Baumann's

statements to the press and to the Ward 5 Republicans do not qualify as protected disclosures,

and Baumann's Amended Complaint fails to identify a particular disclosure to a public body that

qualifies as protected under the DCWPA.  However, close inspection of the Amended Complaint

reveals that Baumann has alleged at least one protected disclosure for which a claim of retaliation

could succeed.  Baumann's June 17, 2009 testimony at the All Hands On Deck arbitration may

be considered a protected disclosure because Baumann was present to testify that the program

may be illegal and in violation of collective bargaining provisions.  *See* Am. Compl. ¶ 13.

13

Defendants argue that this is not a "disclosure" because Baumann was merely "taking a position" in the arbitration. However, at the pleading stage, the Court must construe the allegations most favorably to Baumann, and discovery may reveal that Baumann disclosed information that is protected under the DCWPA. Baumann has alleged that on July 13, 2009, he was stripped of his police power. While Defendants have asserted that Baumann was relieved of his police powers for failure to comply with training requirements, this action could also be seen as evidence of retaliation for protected speech. Therefore, Baumann has alleged an adverse action that can be connected to his protected disclosure. Accordingly, the Court must deny Defendants' motion for judgment on the pleadings with respect to Baumann's DCWPA claim.

C.   *Baumann's Claim Under the D.C. Police Investigations Concerning First Amendment Activities Act*

In Count III of his Amended Complaint, Baumann asserts a violation of the Police Investigations Concerning First Amendment Activities Act of 2004, D.C. Code §§ 5-333.01 *et seq.* Specifically, Baumann alleges that Defendants violated the Act's proscription on the monitoring of First Amendment activities without a "legitimate law enforcement objective." D.C. Code § 5-333.04. Defendants move to dismiss this claim on the basis that the Act does not provide a private right of action.

As its name implies, the Police Investigations Concerning First Amendment Activities Act broadly sets forth standards for police conduct regarding the investigation of persons engaging in First Amendment activities. The Act does not provide an explicit right of action for persons injured by a violation of the statute. Rather, it provides, in pertinent part:

> The provisions of this subchapter are intended to protect persons who are exercising
> First Amendment rights in the District of Columbia, and the standards for police

14

> conduct set forth in this subchapter may be relied upon by such persons in any action
> alleging violations of statutory or common law rights.

D.C. Code § 5-333.13.  Baumann argues that the Act implies a private right of action.  The D.C.

Court of Appeals has explained that in determining whether a statute creates an implied right of

action, courts must look to three factors: (1) whether the plaintiff is "one of the class for whose

*especial* benefit the statute was enacted"; (2) whether there is any indication of legislative intent,

explicit or implicit, either to create such a remedy or to deny one; and (3) whether it is consistent

with the underlying purposes of the legislative scheme to imply such a remedy for the plaintiff.

*In re D.G.*, 583 A.3d 160, 166 (D.C. 1990) (quoting *Cort v. Ash*, 422 U.S. 66 (1975)).  "The

ultimate issue is whether the legislature intended to create a particular cause of action, because

unless such legislative intent can be inferred from the language of the statute, the statutory

structure, or some other source, the essential predicate for implication of a private remedy simply

does not exist."  *Coates v. Elzie*, 768 A.2d 997, 1001 (D.C. 2001) (quotation marks and citations

omitted).  The burden is on the plaintiff to demonstrate that the D.C. Council intended to imply a

right of action.  *Id.*

Baumann is correct that the Act is intended to protect a specific class of persons, i.e.,

persons engaging in First Amendment activities in the District of Columbia.  However, the Court

cannot conclude that the D.C. Council intended to create a right of action based on the language

and the structure of the statute.  The purpose of the Act is defined in the statute as "establish[ing]

the responsibilities of and procedures for the MPD relating to the investigations and preliminary

inquiries, including criminal intelligence investigations and inquiries, that may affect activities

protected by the First Amendment."  D.C. Code § 5-333.03.  According to the D.C. Council's

Committee on the Judiciary, which issued a report on a draft version of the statute, "[t]he

legislation is presented as a response to and policy guidance for District of Columbia law

enforcement based on the past record and the need for elected officials to clearly articulate the

priorities for this jurisdiction." *See* D.C. Comm. Rep., Bill 15-968 (Dec. 1, 2004).  The Judiciary

Committee report also explains that many felt that the policies reflected in the Act were more

appropriate for regulation, but that "[t]he Committee disagrees and presents these important

policies to protect civil liberties and clarify law enforcement best practices as legislation." *Id.*

This legislative history indicates that the Act is merely intended to establish procedures for MPD

to follow when conducting investigations rather than to establish new substantive rights to be

enforced in the courts.  That purpose is consistent with the language in § 5-333.13, which

provides only that the Act's provisions "may be relied upon . . . in any action alleging violations

of statutory or common law rights."  The D.C. Council knows how to create a private right of

action when it wants to, and it clearly chose not to create one here.  Accordingly, the Court finds

that there is no implied right of action in the Police Investigations Concerning First Amendment

Activities Act of 2004.

Baumann alternatively argues, citing *District of Columbia v. Sierra Club*, 670 A.2d 354

(D.C. 1996), that the implied right of action analysis is inappropriate because "[j]udicial

reviewability of agency action does not depend on the creation of a private right of action in the

statute sought to be enforced."  Pl.'s Opp'n (quoting *Sierra Club*, 670 A.2d at 359).  In *Sierra

Club*, the D.C. Court of Appeals held that there was a presumption of judicial review that

enabled the court to consider whether D.C. law prohibited the Mayor from suspending the

District's curbside recycling program.  *See* 670 A.2d at 357-59.  The court recognized that the

Sierra Club "invoked the general equitable jurisdiction of the Superior Court, and sought equitable relief requiring the District to comply with the law." *Id.* at 359; *see also Tucci v. District of Columbia*, 956 A.2d 684, 690-91 (D.C. 2008) (applying *Sierra Club* analysis to request for injunctive relief). Here, however, Baumann is not seeking injunctive relief to compel MPD to comply with a statutory duty. Rather, he is seeking compensatory damages for harms caused by Defendants' violation of the statute. *See* Am. Compl. Count III, Prayer for Relief ¶ 1. Therefore, the implied right of action analysis is appropriate to bar Baumann's claim for damages. *See Tucci*, 956 A.2d at 690 n.3; *Coates v. Elzie*, 768 A.2d at 1001.

Baumann's Amended Complaint does seek two forms of injunctive relief with respect to Count III, however. First, Baumann seeks a judgment "[g]ranting the necessary injunctive relief to ensure that Defendants' unlawful actions cease and desist, and do not continue into the future." Am. Compl. Count III, Prayer for Relief ¶ 3. The Court notes that it has already denied Baumann's requests for preliminary injunctive relief on the ground that he had not demonstrated irreparable harm. However, the relief requested by Baumann is within the Court's equitable powers, and Baumann may produce evidence sufficient to demonstrate that the extraordinary remedy of a permanent injunction is warranted. Therefore, the Court shall not preclude Baumann from seeking an injunction to prevent MPD from violating the Police Investigations Concerning First Amendment Activities Act.

Baumann's second request for injunctive relief as to Count III is for a judgment "[c]ompelling the institution of appropriate disciplinary actions, including, but not limited to, dismissal proceedings against all officials violating this Act, an any other responsible supervisors, and imposing a civil fine against each of these parties." Am. Compl. Count III,

17

Prayer for Relief ¶ 4.  This request for relief goes far beyond compelling agency compliance with a statute, as there is nothing in the Act that requires officials to be disciplined or fined for noncompliance.  An agency's decision not to discipline its employees is generally considered to be committed to the agency's discretion and outside the purview of judicial review.  *Cf. Sierra Club*, 670 A.2d at 360 ("The determination whether and when to institute enforcement proceedings against a specific individual is a core executive responsibility which may reasonably be viewed as having been committed to agency discretion so as to preclude substantive judicial review.").  Accordingly, the Court shall dismiss Baumann's claim insofar as it seeks injunctive relief in form of penalties or fines against officials who violated the statute.

## IV.  CONCLUSION

For the foregoing reasons, the Court shall GRANT-IN-PART Defendants' [36] Motion for Judgment on the Pleadings as to Count III except with respect to Plaintiff's request for prospective injunctive relief and DENY-IN-PART the motion in all other respects.  An appropriate order accompanies this Memorandum Opinion.


Date: September 30, 2010.


                              */s/*_____
                              COLLEEN KOLLAR-KOTELLY
                              United States District Judge